**Harold DARNELL, Appellant,**

v.

**NORTH DAKOTA WORKERS COM-
PENSATION BUREAU, Appellee.**

Civ. No. 890135.

Supreme Court of North Dakota.

Jan. 18, 1990.

Joseph F. Larson II, Jamestown, for appellant.

Dean J. Haas, Asst. Atty. Gen., Bismarck, for appellee.

VANDE WALLE, Justice.

Harold Darnell appealed from a district court judgment affirming an order by the North Dakota Workers Compensation Bureau dismissing his claim for benefits. We affirm.

Harold began working as a guard at the North Dakota State Penitentiary in Bismarck on March 2, 1987. Harold had been treated for alcoholism at the State Hospital in Jamestown on seventeen occasions from March 1974 through October 1981, but, according to him, he had totally abstained from alcohol from October 1981 until May 29, 1987. After completing his shift at the Penitentiary at 5:00 a.m. on May 29, 1987, Harold received an appraisal from his supervisor which rated his work performance as "poor" and indicated that he:

> "Needs to think out a task before attempting to complete it. Double check his work. Do not rely on memory. Makes too many repeated small mistakes. Needs to have direct contact with inmates. Ask questions when in doubt. Assign under direct supervision of another Lt. to obtain second opinion before full time employment. At this point it could go either way."

According to Harold, he became very confused and depressed because he felt the appraisal was unjust, and, while driving from Bismarck to his home in Jamestown, he began drinking from a bottle of whiskey which he kept in his trunk. After arriving in Jamestown, he drove back to Bismarck where he was admitted to a hospital that afternoon after he had drank three quarts of whiskey that day. Harold was diagnosed as suffering from pseudoseizures and depression. After he was discharged from the hospital on June 6, 1987, he continued to drink heavily. He was readmitted to the hospital in July 1987 and received alcohol rehabilitation treatment at Heartview until he was discharged in August 1987. Harold did not return to work at the Penitentiary.

Harold filed a claim for medical and disability benefits with the Bureau, contending that the "on-the-job depression and stress" coupled with the "poor" work appraisal triggered his reoccurrence of active alcoholism.

After a formal hearing, the Bureau dismissed Harold's claim, finding:

"VIII.

"The claimant was not under a dilution [sic] or in any way under any compulsion to act in any given manner as a result of receiving his performance appraisal.

"IX.

"Claimant became intoxicated following receiving the bad performance appraisal.

"X.

"Claimant's diagnosis is recurrent alcoholism. Claimant has no other psychiatric condition which necessitated medical treatment, or contributed to disability.

"XI.

"Claimant's intoxication came as a result of claimant exercising his own free will to drink.

"XII.

"Claimant's [sic] subjectively links his drinking on May 29, 1987, to the bad performance appraisal. However, an ex-

trinsic factor such as a bad performance report is not the proximate cause of the drinking episode but is merely used as an excuse to change the blame from himself to an extrinsic factor.

## "XIII.

"Dr. Kemp confirmed that the claimant was under no compulsion to drink. The physician confirms that the claimant had a free will and that he exercised this free will when he drank.

## "XIV.

"Claimant has failed to prove that his employment was the proximate cause of his drinking episode and recurrent alcoholism.

\* \* \* \* \* \*

## "I.

"Claimant failed to prove an injury by accident arising out of and in the course of his employment.

## "II.

"Claimant has failed to prove that his recurrent alcoholism is causally related to an employment injury."

The district court affirmed the Bureau's decision, and Harold appealed.

■ Our review of administrative agency decisions is governed by Section 28–32–19, N.D.C.C., and requires a three-step process to determine: (1) If the findings of fact are supported by a preponderance of evidence; (2) if the conclusions of law are sustained by the findings of fact; and (3) if the agency decision is supported by the conclusions of law. *Howes v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 730 (N.D.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1126, 103 L.Ed.2d 189 (1989); *Grace v. North Dakota Workmen's Compensation Bureau,* 395 N.W.2d 576 (N.D.1986). In determining whether or not an administrative agency's findings of fact are supported by a preponderance of evidence we do not make independent findings of fact or substitute our judgment for that of the agency. *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214 (N.D.1979). Rather, we determine only whether a reasoning mind could have reasonably determined that the agency's factual conclusions were supported by the weight of the evidence. *Id.*

■ Harold initially argues that because the Bureau found that he drank of his own free will, the thrust of the Bureau's decision is that he intentionally injured himself, and therefore, it has the burden of proof under Section 65–01–11, N.D.C.C.,[1] to prove that he is not entitled to benefits. We disagree.

■ Section 65–01–11, N.D.C.C., generally requires the claimant to prove a compensable injury by a preponderance of evidence in order to participate in the fund. *Howes v. North Dakota Workers Compensation Bureau, supra; Moses v. North Dakota Workers Compensation Bureau,* 429 N.W.2d 436 (N.D.1988). However, the Bureau has the burden of proof if it claims that an employee is not entitled to benefits because of the employee's willful intent to injure himself or the employee's voluntary intoxication.

That burden applies, for purposes of this case, to situations in which an "injury was caused ... by reason of the voluntary intoxication of the employee" and "the injury

---

1. Section 65–01–11, N.D.C.C., provides:

"If the bureau or an employer claims that an employee is not entitled to the benefits of the North Dakota Workers' Compensation Law by reason of the fact that the employee's injury was caused by the employee's willful intention to injure himself, or to injure another, or by reason of the voluntary intoxication of the employee, the burden of proving such exemption or forfeiture is upon the bureau or upon the person alleging the same; however, a blood alcohol level above the legal intoxication limit as defined in subsection 3 of section 39–20–07 creates a rebuttable presumption that the injury was due to intoxication. Any claimant against the fund, however, has the burden of proving by a preponderance of the evidence that the claimant is entitled to participate in the same. In the event of a claim for death benefits the official death certificate must be considered as evidence of death and may not be used to establish the cause of death."

was due to intoxication." Section 65–01–11, N.D.C.C.; *see generally* 1A Larson's Workmen's Compensation Law ¶ 34 et seq. (1985). That language is applicable to cases in which the employee's voluntary intoxication is the cause of the employee's injury [see 1A Larson's, *supra*, at ¶¶ 34.31; 34.33(a) ] and does not require the burden of proof to shift when the alleged injury is itself alcoholism. We conclude that Section 65–01–11, N.D.C.C., which shifts the burden of proof to the Bureau in certain instances is not applicable to Harold's claim.

 Harold also contends that the Bureau's findings of fact are not supported by a preponderance of the evidence. Relying on a subjective causal nexus standard adopted in *Deziel v. Difco Laboratories, Inc.*, 403 Mich. 1, 268 N.W.2d 1 (1978), he argues that he honestly perceived that the

stress of his employment substantially contributed[2] to and triggered his pre-existing, asymptomatic alcoholism.

In order to participate in the fund, a claimant must prove a compensable injury. Section 65–01–11, N.D.C.C.; *Moses v. North Dakota Workers Compensation Bureau, supra.* As applicable to this claim, Section 65–01–02(7), N.D.C.C., defined a "compensable injury"[3] as:

"[A]n injury by accident arising out of and in the course of employment including an injury caused by the willful act of a third person directed against an employee because of his employment, but such term shall not include an injury caused by the employee's willful intention to injure himself or to injure another, nor any injury received because of the use of narcotics or intoxicants while in

2. Although Harold argues that the work stress, including the work appraisal, aggravated his pre-existing, asymptomatic alcoholism, his argument is more appropriately framed in terms of whether his employment was a substantial contributing factor to his alcoholism. See *Satrom v. North Dakota Workmen's Compensation Bureau*, 328 N.W.2d 824 (N.D.1982). Aggravation of a pre-existing condition by a compensable injury is compensable on a proportionate basis Section 65–05–15, N.D.C.C.; *Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791 (N.D.1980); *Moses v. North Dakota Workers Compensation Bureau*, 429 N.W.2d 436 (N.D.1988). To activate the aggravation statute, a pre-existing condition must be accompanied by an actual impairment or disability known in advance of the work-related injury. *Balliet v. North Dakota Workmen's Compensation Bureau, supra.* Harold's aggravation argument presupposes a causal relationship between alcoholism and his. employment.

3. The language defining a compensable injury was amended and renumbered as subsection (8) in 1989 N.D.Sess.Laws ch. 765, § 1, and provides, in relevant part:

"'Compensable injury' means an injury by accident arising out of and in the course of employment.

"a. The term 'compensable injury', in addition to an injury by accident, includes:

"(1) Any disease which can be fairly traceable to the employment. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected in the course of his employment. The disease must be incidental to the character of the

business and not independent of the relation of employer and employee. The disease includes impairment and effects from radiation fairly traceable to the employment. It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from. that source as a rational consequence. However, preventative treatment for communicable diseases is not compensable under this title.

\* \* \* \* \* \*

"(3) Injuries due to heart attack, stroke, and mental injury precipitated by mental stimulus, which must be causally related to the worker's employment, with reasonable medical certainty, and which must have been precipitated by unusual stress.

\* \* \* \* \* \*

"b. The term 'compensable injury' does not include:

\* \* \* \* \* \*

"(2) Any injury caused by the use of narcotics or intoxicants.

\* \* \* \* \* \*

"(8) A mental or emotional injury arising principally out of a bona fide personnel action, including a transfer, promotion, demotion, or termination except such action that is the intentional infliction of emotional harm."

As originally introduced the bill to amend Section 65–01–02(8)(a)(1), (3), N.D.C.C., required mental injuries precipitated by mental stimulus to be "precipitated by unusual stress, objectively viewed." The "objectively viewed" language was deleted. January 24, 1989 Minutes of Senate Judiciary Committee regarding Senate Bill 2256. The 1989 amendments are not applicable to this claim.

the course of the employment.... Such term, in addition to an injury by accident, includes:

"a. Any disease which can be fairly traceable to the employment. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected in the course of his employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease includes impairment and effects from radiation fairly traceable to the employment. It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." [4]

▆ A claimant must prove that an injury or disease occurred in the course of employment and that the resulting disability is causally connected to that employment. *Howes v. North Dakota Workers*

*Compensation Bureau, supra; Satrom v. North Dakota Workmen's Compensation Bureau,* 328 N.W.2d 824 (N.D.1982). However, a claimant's employment need not be the sole cause of an injury; it is sufficient if employment activities are a substantial contributing factor to the injury. *Satrom v. North Dakota Workmen's Compensation Bureau, supra.* An injury which can be medically related to the repeated stress and strain of a claimant's usual work exertions is a compensable injury. *Id.*

Although this court has not considered the issue of mental injuries from mental stimuli in workers compensation claims,[5] we have held that disabilities resulting from neurosis caused by a work-related injury are compensable [*Lyson v. North Dakota Workmen's Compensation Bureau,* 129 N.W.2d 351 (N.D.1964)], and that mental injuries resulting from the termination of employment are not compensable. *Choukalos v. North Dakota Workers' Compensation Bureau,* 427 N.W.2d 344 (N.D.1988).

Under the circumstances of this case, we do not believe it is necessary to analyze the various standards for assessing mental injuries caused by mental stimuli.[6] In this

---

4. Section 65–01–02(12), N.D.C.C., defined "fairly traceable to the employment" as a disease that:
"a. Arises under conditions wherein it is apparent to the rational mind upon consideration of all the circumstances that there is a direct causal connection between the conditions under which the work is performed and the disease;
"b. Can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
"c. Can be fairly traced to the employment...."
As part of the 1989 amendments to Section 65–01–02, N.D.C.C., this definition was renumbered as subsection 17 without any substantive change.

5. This court has recognized the difficulty involved with independent claims for infliction of emotional distress in the law of torts. *Muchow v. Lindblad,* 435 N.W.2d 918 (N.D.1989).
The difficulty in assessing a causal relationship between on-the-job stress and mental or emotional disorders for workers compensation claims is also well recognized. *McGarrah v. SAIF,* 296 Or. 145, 675 P.2d 159 (1983); see Cook, Workers' Compensation and Stress

Claims: Remedial Intent and Restrictive Application, 62 Notre Dame L.Rev. 879 (1986–87); Joseph, The Causation Issue in Workers' Compensation Mental Disability Cases: An Analysis, Solutions, and a Perspective, 36 Vand.L.Rev. 263 (1983). The cautiousness used in evaluating stress related injuries is reflected by the different threshold standards utilized before those types of claims are compensable. See Cook, *supra;* Joseph, *supra;* Annot. 97 A.L.R.3d 161 (1980).

6. See fn. 3 and 5. We note that the subjective causal nexus test relied upon by Harold and adopted in *Dezeil v. Difco Laboratories, Inc., supra,* has been frequently criticized and rarely followed because it "ignores the nature of neurotic disabilities which seek to fasten blame for unresolved inner conflicts on any convenient scapegoat such as one's employer" and fosters the conclusion that trivial employment injuries should be "permitted to act as a 'hook' on which neurotics can hang their troubles." Cook, Workers' Compensation and Stress Claims: Remedial Intent and Restrictive Application, 62 Notre Dame L.Rev. 879, 907 (1986–87); see also, 1B Larson's, Workmen's Compensation Law, § 42.23(d) (1987).

case the alleged injury is alcoholism. The imprecision and lack of agreement among the medical profession in the area of alcoholism is well recognized. See *Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

In this case, both Harold and the Bureau primarily relied upon the testimony of Dr. Frank Kemp, a board-eligible psychiatrist, to describe alcoholism and its effect on Harold. Dr. Kemp diagnosed Harold as having a "personality disorder with strong borderline personality characteristics" and did not "link" that personality disorder to his occupation. Dr. Kemp described Harold's personality disorder as a "long history of ... maladaptive behavior ... [which means] dealing with problems in a way ... that doesn't tend to solve the problem." Dr. Kemp also diagnosed Harold as a person with an alcoholic history but observed that, in the field of psychiatry, alcoholism is a manifestation of other problems. Dr. Kemp testified that Harold's personality disorder did not inhibit his freedom of choice to drink and that his personality disorder indicated a deeper problem than alcohol abuse. Dr. Kemp testified:

"Q. (MR. HAAS CONTINUING) Would you characterize the bad performance report as the direct trigger of his drinking or would you say that he made a voluntary choice on that day?

\* \* \* \* \* \*

"A. ... If you mean is there—is there some compelling stimulus that causes this man—that he has to react by taking alcohol, the answer to that is no. That would be contrary to any alcohol philosophy, that—on the other hand, if you're saying did he voluntarily make a choice, the answer would have to be yes, based on this man's view of himself in his universe, of course, that he was justified in taking the drinks because people were misusing him from his point of view.

The Michigan Legislature repudiated the *Dezeil* test in 1982 by enacting legislation to provide that "mental disabilities shall be compensable when arising out of actual events of employ-

"Q. All right.

"A. Or they were incompassionate.

"Q. Does Mr. Darnell have any other underlying psychiatric problems other than the personality disorder that you referred to?

"A. No, not really. The psychiatric disorder I'm referring to, the personality disorder is something that results and can manifest depression, suspiciousness, projection of blame, manipulation, behavioral characteristics such as that.

"Q. But again, Doctor, just to be clear, the fact that he has this personality disorder does not inhibit his ability to make a choice.

"A. No. The idea of the personality disorder, again, doesn't take away freedom of choice. It simply says that a person habitually will act in such and such a way and will do this simply because of the rationalisms by which they live their lives."

Dr. Kemp effectively testified that Harold's work environment and the work appraisal were an excuse for, but did not cause, Harold to drink and that Harold chose to drink of his own volition. According to Dr. Kemp, an excuse for drinking proffered by an alcoholic is not the cause of recurrent alcoholism.

In our view, providing an excuse for voluntarily drinking cannot be a substantial contributing factor to the alcoholism. We believe that the Bureau could find from the evidence in this case that Harold's employment activities were an excuse for voluntarily drinking. That finding thus supports the conclusion that Harold's voluntary activities broke the causal link necessary to establish an injury arising out of and in the course of employment. See *Dan River, Inc. v. Shinall*, 186 Ga.App. 572, 367 S.E.2d 846, 847 (1988) [detoxification treatment not a compensable injury under statute prohibiting recovery for "[a]lcoholism or disabilities attributable thereto"]; *Hansen v. Weyerhaeuser Co.*, 89 Or.App. 349, 749 P.2d 1183 (1988) [alcohol rehabilitation

ment, not unfounded perceptions thereof." 1B Larson's, *supra*, at ¶ 42.23(d); see *Bentley v. Associated Spring Co.*, 133 Mich.App. 15, 347 N.W.2d 784 (1984).

not compensable as work-related injury based on evidence that alcoholism pre-existed injury and was not caused or made symptomatic by employee's injuries]; *Jose v. Equifax, Inc.,* 556 S.W.2d 82 (Tenn.1977) [allegation that habitual alcoholic problem developed to alleviate psychiatric problem failed to allege injury by accident arising out of and in the course of employment].

Harold's reliance on *Globe Machine v. Yock,* 79 Or.App. 9, 717 P.2d 1235 (1986); *Adsitt v. Clairmont Water District,* 79 Or.App. 1, 717 P.2d 1231 (1986); and *Matter of Compensation of Gygi,* 55 Or.App. 570, 639 P.2d 655 (1982), is misplaced. We are not persuaded that those cases require a different result because the Oregon Workers Compensation Act authorizes the Oregon Court of Appeals to conduct a de novo review of cases heard by the Workers Compensation Board and make its own findings of fact. ORS 656.298(6); [7] *Adsitt, supra; Gygi, supra.* In those cases the court made its own findings on de novo review whereas here the Bureau made the findings of fact and we review those findings.

Under these circumstances, we believe that a reasoning mind could have reasonably determined that Harold's employment was not a substantial contributing factor to his alcohol problems. The Bureau's finding that Harold's recurrent alcoholism was not causally related to his employment is supported by the weight of the evidence. We therefore conclude that the Bureau's findings of fact are supported by a preponderance of evidence; that the Bureau's conclusions of law are supported by its findings of fact; and that the Bureau's decision is supported by its conclusions of law.

The district court judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

---

7. ORS 656.298(6), provides:
 "The review by the Court of Appeals shall be on the entire record forwarded by the board.

Review shall be as provided in ORS 183.-482(7) and (8)."