Gary SLOAN, Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**Power Insulation Co., Respondent.**

**Civ. No. 900181.**

Supreme Court of North Dakota.

Nov. 13, 1990.

Janell M. Knutson (argued), Dietz & Little, Bismarck, for appellant.

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellee.

MESCHKE, Justice.

Gary D. Sloan appealed from a district court judgment affirming an order of the Workers Compensation Bureau denying Sloan further medical and disability benefits. We affirm.

In 1977 Sloan, a sheet metal worker, suffered a work-related lower back injury while lifting a sky climber. The Bureau paid Sloan some benefits for that injury.

On May 14, 1979, while employed as a sheet metal worker by Power Insulation Company, Sloan suffered another lower back injury when he lifted a bucket full of steel nuts and bolts at the Coal Creek Power Station near Underwood. Sloan missed six days of work and the Bureau paid him benefits. Sloan's physician at that time noted that Sloan reported "sudden sharp pain in the lumbosacral spine" but no radiation of pain into the leg. Sloan's x-rays were negative. The physician released Sloan to return to work with instructions to do no heavy lifting for two weeks.

After that injury Sloan returned to Power Insulation Company where he worked as a laborer, foreman, and general foreman. Most of the time until he was laid off in 1982, Sloan worked as a general foreman in a supervisory capacity. After his layoff, Sloan worked on his family farm and supplemented his income with occasional sheet metal jobs without experiencing serious back problems. Although Sloan testified that, from May 1979 to June 1988, he experienced "some" back pain occasioned by lifting, he did not miss any work due to back problems or have any medical treatments for back problems during that time.

In early June 1988 Sloan had chiropractic treatment in North Dakota after experiencing lower back pain that radiated down his leg. Sloan was diagnosed as having "a lumbo-sacral strain/sprain with resultant radicular pain and muscle spasm." Sloan apparently did not submit a claim to the Bureau for the chiropractic treatment. Afterward, Sloan left North Dakota to take a job as a sheet metal worker for Tweet & Garet Mechanical in Green Bay, Wisconsin. While working in Wisconsin in late June 1988, Sloan injured his back when he lifted a sheet of metal weighing between 50 and 60 pounds.

Sloan returned to North Dakota and sought medical treatment in July 1988 from Dr. Alain Taylon and Dr. D.M. Larson. Dr. Larson, a neurologist, reported that Sloan was unable to sleep or work

because of his back pain and that his impression of Sloan's condition was "[c]hronic low back pain, etiology undetermined." In February 1989, Sloan consulted Dr. Charles Dahl, an orthopedic surgeon. A CT scan showed "some disc space herniation at L4–5 and L5–S1 which is mild and primarily on the left side." An x-ray showed "significant disc space collapse at L5–S1 and less disc space at L4–5 with some retrolisthesis and spur formation." Dr. Dahl diagnosed Sloan as having "degenerative disc disease in the lower back with radiculopathy." Sloan's condition gradually improved and he returned to work in March 1989.

Sloan sought medical and disability benefits from the Bureau for the nearly nine months in 1988 and 1989 that he was unable to work due to back pain. Following a hearing, the Bureau found:

### X.

Dr. Dahl testified wear and tear throughout life, including work activities, contribute to degenerative disc disease. Therefore, Dr. Dahl concluded that claimant's work as a sheet metal worker contributed to the underlying degenerative disc disease. However, Dr. Dahl agreed that the process was essentially asymptomatic when claimant was injured in Wisconsin in June, 1988. Dr. Dahl concluded that claimant's injury in June, 1988 produced claimant's symptoms, and therefore caused the medical expense and disability. Dr. Dahl could not conclude that claimant would have been rendered disabled without the June, 1988 injury as the trigger.

### XI.

Claimant['s] current symptoms are not just the natural progression of an underlying disease process caused by North Dakota employment. Claimant's injury in Wisconsin is the proximate cause of claimant's current condition.

The Bureau denied Sloan further benefits, concluding:

### II.

Claimant has failed to prove a cause and effect relationship between his 1979 injury and his disability and medical treatment in 1988.

### III.

Claimant's disability and medical treatment in 1988 were triggered by an injury sustained in Wisconsin.

### IV.

Claimant's North Dakota employment acted as a substantial contributing factor in the development of the underlying dormant degenerative disc disease. However, but for the June, 1988 triggering injury in Wisconsin, claimant could have continued to work without medical treatment as before the injury. Therefore, the Wisconsin injury caused the disability claimant has sustained.

### V.

Claimant has failed to prove that his current medical condition is the progression of an underlying disease process caused by North Dakota employment. Rather, claimant's injury in Wisconsin caused claimant's medical treatment and expense.

The district court affirmed the Bureau's decision. Sloan appealed.

Our review of the Bureau's decision is limited and controlled by NDCC 28–32–19. *Holmgren v. North Dakota Workers Comp. Bureau,* 455 N.W.2d 200, 201 (N.D. 1990). We affirm a Bureau's decision unless its findings of fact are not supported by a preponderance of evidence, its conclusions of law are not sustained by the findings of fact, its decision is not supported by its conclusions of law, or its decision is not in accordance with the law. *Jones v. North Dakota Workers Compensation Bureau,* 461 N.W.2d 273, 274 (N.D.1990). In reviewing the Bureau's findings of fact, we determine only whether the Bureau could have reasonably reached those factual determinations by the greater weight of all the evidence. *Perman v. Workers*

*Compensation Bureau,* 458 N.W.2d 484, 487 (N.D.1990). These standards guide our appellate review of this decision by the Bureau.

Sloan argues that the Bureau's findings are not supported by a preponderance of the evidence, that its conclusions are not supported by the findings, and that its decision is not in accordance with the law. We disagree.

■ A "compensable injury" for purposes of workers compensation is "an injury by accident arising out of and in the course of employment," and includes "[a]ny disease which can be fairly traceable to the employment." NDCC 65–01–02(7)(a).[1] A worker's employment need not be the sole cause of an injury; it is sufficient if the work-related stress is a substantial contributing factor to the injury. *Satrom v. North Dakota Workmen's Compensation Bureau,* 328 N.W.2d 824, 831 (N.D.1982). *See also Syverson v. North Dakota Workmen's Compensation Bureau,* 406 N.W.2d 688, 690 (N.D.1987). It is equally well established, however, that the Workers Compensation Act "was not intended to have extraterritorial effect, so as to render the compensation fund liable for injuries sustained in the course of an employment the situs of which is without the state." *Altman v. North Dakota Workmen's Compensation Bureau,* 50 N.D. 215, 195 N.W. 287 Syllabus 1 (1923).[2] Unless there is coverage for extraterritorial activities under NDCC 65–08, injuries arising out of activities and employment outside of North Dakota are not the responsibility of the Bureau.

■ The Bureau determined that, although Sloan's North Dakota employment was a substantial contributing factor in the development of his underlying dormant degenerative disc disease, Sloan's Wisconsin injury caused his disability. The Wisconsin injury is not compensable under North Dakota workers compensation laws. In effect, the Bureau ruled that Sloan's Wisconsin injury was a superseding intervening cause of his disability.[3]

Sloan maintains that his disability was not caused by the recent Wisconsin injury but, rather, that it was the direct and natural result of the progression of his degenerative disc disease caused by his earlier North Dakota employment. In support of this position, Sloan relies on a textbook analysis:

[O]nce the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. This may sound self-evident, but in close cases it is sometimes easy to overlook this essentially simple principle. In a Utah case, claimant had suffered a compensable accident in 1966, injuring his back. Several years later, this condition was triggered by a sneeze into a disc herniation, for

---

1. The 1989 Legislature amended the language defining "compensable injury" and renumbered it as subsection (8) by 1989 N.D.Sess.Laws Ch. 765 § 1. *See* NDCC 65–01–02(8)(a)(1). The same 1989 enactment also declared that a "compensable injury" does not include "[a] nonemployment injury that, although acting upon a prior compensable injury, is established as an independent intervening cause of injury." *See* NDCC 65–01–02(8)(b)(7). The 1989 amendments are not applicable to this claim. *See Darnell v. Workers Compensation Bureau,* 450 N.W.2d 721, 724 n. 3 (N.D.1990). We look to the statutes as they existed before the 1989 amendments.

2. NDCC 65–05–05 provides that "[w]here compensation is received through some other state act no compensation shall be allowed under this title unless such benefits are awarded by anoth-er state as a supplement to this state's benefits." The Bureau does not take the position that this statute bars Sloan from receiving North Dakota benefits. Apparently, Sloan has received no workers compensation benefits through Wisconsin.

3. Although we agree with Sloan that the 1989 Legislature's enactment of NDCC 65–01–02(8)(b)(7) is inapplicable here [*see* Footnote 1, *supra* ], we do not understand Sloan to argue that an intervening cause is irrelevant in determining causation of disability in workers compensation cases unless legislatively recognized. Rather, Sloan primarily argues that the evidence was insufficient to allow the Bureau to determine as a matter of fact that the Wisconsin injury was a superseding intervening cause of disability.

which claimant required surgery. The medical testimony was that because of the back condition, it was probable that had claimant not had the sneezing episode, some other major or minor event would have eventually necessitated surgery. The finding that the sneezing episode was the independent cause of claimant's disability, and the resultant denial of compensation, were held to be error, and benefits were awarded on appeal. This result is clearly correct. The presence of the sneezing incident should not obscure the true nature of the case, which is nothing more than that of a further medical complication flowing from a compensable injury. If the herniation had occurred while claimant was asleep in bed, i[t]s characterization as a mere sequel to the compensable injury would have seemed obvious. The case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances. A different question is presented, of course, when the triggering activity is itself rash in the light of claimant's knowledge of his condition. [Footnotes omitted].[4]

1 A. Larson, *Workmen's Compensation Law* § 13.11(a), at pp. 3–510, 3–515—3–517 (1990). Larson elaborates further:

The issue in all of these cases is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. By the same token, denials of compensation in this category have invariably been the result of a conclusion that the requisite medical causal connection did not exist.

*Id.* at pp. 5–517—5–518 [Footnotes omitted]. Thus, the causal connection between work activities and a medical condition is a factual matter.

Sloan asserts that the Bureau, in finding that the Wisconsin injury caused his disability, ignored the significance of his work-related degenerative disc disease and that the Bureau gave no adequate explanation for disregarding medical evidence in his favor. We disagree.

Dr. Dahl testified:

A. ... I felt over a long course of time he had been having repeated small injuries to his disc which was causing what we call degenerative disc disease, the disc was collapsing, and that it had collapsed to a point where it was starting to impinge upon the nerve, which was giving him pain down into his leg. That's the radiculopathy.

Q. [By Mr. Haas] ... Now, the x-ray, I imagine, won't tell you how long the degenerative disc disease had been there.

A. No. Longer than the six months, though, from June to when I saw him.

Q. He likely had some collapse of the disc space prior to the injury in June of 1988?

A. That's correct.

\*    \*    \*    \*    \*    \*

Q. ... Doctor, would the June 1988 injury also have been the triggering mechanism to make the degenerative disc disease spring from a dormant condition into a symptomatic condition?

A. So to speak, yes. I think that's a good description of it, I guess.

Q. And, Doctor, would you have an opinion with any reasonable medical certainty whether but for that injury Mr. Sloan would likely have been able to continue working?

A. Yes. The way I look at this case and what I think you're after here is that he was working, he was having repeated small injuries and—that he was working, he was having repeated small injuries and then he had an injury, a lifting, twisting-type injury, that gave him some pain, that was more pain than he was usually having, and it persisted longer. If he wouldn't have had that injury, I

---

**4.** The Utah case discussed by Larson is *Perchelli v. Utah State Industrial Commission,* 25 Utah 2d 58, 475 P.2d 835 (1970).

think he would have trucked on and continued working. I think his days were numbered, however, because the amount of disc space he had—collapse that he had in his back set him up for this, so he was an accident waiting to happen and it would have been a matter of time.

Q. But as far as you know, the degenerative problem was relatively dormant prior to the June '88 injury?

A. That's right.

\* \* \* \* \* \*

Q. And in this case, Doctor, isn't there a history of Mr. Sloan lifting something relatively heavy in nature, having pain very shortly after that, having had a history prior to that of not much medical treatment, no work loss, significant disability after? Don't you have a significant trigger rather than a natural progression of an underlying condition?

A. Absolutely. I've tried to make that clear, I thought. The June injury was obviously significant in this man's history of why he was sitting in front of me. If he would have never had that injury on June 8, however, and I would have seen these x-rays, I think they probably would have shown me the same thing.

Q. And he may not have any symptoms?

A. Right.

Thus, Dr. Dahl connected Sloan's disability causally to the Wisconsin injury.

After Sloan's 1979 injury, he did not require medical treatment for his back until early June 1988. Sloan was able to work unimpaired for many years until the June 1988 Wisconsin injury. Moreover, Dr. Dahl testified that the Wisconsin event which triggered Sloan's disability—lifting sheet metal weighing between 50 and 60 pounds—was a significant trigger rather than the natural progression of the underlying degenerative disc disease. This case is unlike the circumstances in the Utah decision analyzed by Larson because, here, the triggering event was a work-related injury in another jurisdiction.

Dr. Dahl said "[t]here's no question that what happened to him in June 1988 was a significant factor for him, because every other time he had gotten better and didn't do much about it, but this one seemed to persist." Although Dr. Dahl was reluctant to say that the Wisconsin injury was the sole cause of his disability, the doctor did testify that the June 1988 injury made symptomatic an otherwise dormant condition and that, but for the June 1988 injury, Sloan could have continued to work. In our view, Dr. Dahl's opinion, recited by the Bureau in its findings and conclusions, provided an adequate explanation for the Bureau's decision. *See Jones v. North Dakota Workers Compensation Bureau, supra*, 461 N.W.2d at 275. We believe that the Bureau reasonably reached its factual determination that Sloan's Wisconsin injury was the cause of his disability.

■ Sloan asserts, alternatively, that the Bureau erred in denying him reduced aggravation benefits under NDCC 65–05–15. However, we have construed this statute to refer to a preexisting condition "accompanied by an actual impairment or disability known in advance of the work-related injury" and "to disabling ones only." *Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791, 794 (N.D. 1980). In other words, "not just *any* prior condition authorizes apportionment of benefits; it must be a 'disabling' one which significantly impairs the work capacity of the claimant." *Elliott v. North Dakota Workers Compensation Bureau*, 435 N.W.2d 695, 698 (N.D.1989) [Emphasis in original]. Sloan did not have a disabling impairment before his Wisconsin injury.

In this case, the Bureau concedes that had the June 1988 Wisconsin injury occurred in North Dakota, the claim would have been fully compensable. The record shows that Sloan's degenerative disc disease was dormant and that he did not suffer from a known and significant work impairment before the Wisconsin injury. The aggravation statute is therefore inapplicable.

Accordingly, the district court judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.