Brendan N. KUKLOK, Appellant,

v.

**NORTH DAKOTA WORKERS' COMPENSATION BUREAU,**
Appellee,

and

**Reading & Bates Construction Company, Respondent.**

**Civ. No. 900008.**

Supreme Court of North Dakota.

Nov. 24, 1992.

Baker Legal Clinic, Fargo, for appellant; argued by Alan Baker.

Andrew Moraghan (argued), Asst. Atty. Gen., North Dakota Workers' Compensation Bureau, Bismarck, for appellee.

JOHNSON, Justice.

Brendan Kuklok appeals from a district court judgment affirming a June 30, 1989 order of the North Dakota Workers' Compensation Bureau, awarding benefits to Kuklok but denying his request for treatment of a psychiatric disorder. We affirm.

On October 10, 1981, Kuklok sustained a fractured collar bone in a one vehicle accident, while working for Reading & Bates Construction Company. One week later, while laying a pipeline as an employee of the same company, Kuklok sustained contusions of the left kidney, chest, and abdomen when he was struck by a portion of the pipe. It was subsequently determined that as a result of these accidents Kuklok also suffered a disabling back injury.

Kuklok filed separate claims for workers' compensation benefits for the injuries he sustained in these two accidents. After numerous medical evaluations and legal proceedings, extending over a period of eight years, the Bureau, on June 30, 1989, entered a "FINAL ORDER AWARDING BENEFITS" to Kuklok. The Bureau determined that as a result of these work-related accidents Kuklok sustained a back injury that prevented him from doing the type of physical labor that he was performing at the time the accidents occurred. Thus, the Bureau awarded Kuklok temporary total disability benefits, commencing from the date of the first accident. The Bureau also awarded Kuklok payments for a permanent partial impairment "equal to 15 percent of the whole body." In addition, the Bureau awarded Kuklok payment of all reasonable medical expenses to treat his injuries and payment of "future disability and/or rehabilitation benefits" for his back injury. However, the Bureau determined that Kuklok failed to prove that he has a psychiatric disorder which is causally related to the 1981 work accidents and that Kuklok is not entitled to benefits for treatment of his psychiatric problems. Kuklok appealed to the district court, alleging that the Bureau had erred in refusing his request for psychiatric treatment. The district court entered judgment affirming the Bureau's order. Kuklok then filed this appeal.

Our scope of review is governed by Section 28–32–19, N.D.C.C. When the claimant questions the Bureau's findings of fact, we uphold the Bureau's decision unless its findings are not supported by a preponderance of the evidence. Section 28–32–19(5), N.D.C.C. In making that determination, we do not make independent findings of fact or substitute our judgment for that of the Bureau. *Jones v. Workers Compensation Bureau*, 461 N.W.2d 273 (N.D.1990). Rather, we consider only whether the Bureau could have reasonably reached its factual determinations by a preponderance of the evidence. *Moses v. North Dakota Workers Compensation Bureau*, 429 N.W.2d 436 (N.D.1988).

This case presents a classic illustration of the limits of psychiatry and psychology in analyzing human behavior based upon the present state of scientific knowledge. The medical experts in this case are in agreement that Kuklok suffers with psychiatric problems. They disagree, however, whether those problems are causally related to the 1981 employment accidents. Kuklok relies primarily upon the conclusions of Dr. Carey C. Mayer, a psychiatrist practicing in Grand Forks and Dr. Kenneth Foster, a psychiatrist practicing in Red Bluff, California.

Kuklok was referred to Dr. Mayer for psychiatric evaluation in October 1982. Dr. Mayer first concluded that Kuklok suffers from "an adjustment disorder with mixed emotional features, particularly an anxious and angry mood." Dr. Mayer later diagnosed Kuklok as also suffering from an "agitated depression." Dr. Mayer concluded that Kuklok's adjustment disorder was precipitated by his 1981 employment accidents, but in a letter directed to the Bureau's Medical Director, Dr. E.J. Laskowski, dated January 13, 1983, Dr. Mayer stated:

"I highly suspect there has been all along an underlying atypical personality disorder that has to some degree predisposed Brend[a]n's development of an adjustment disorder."

In making his earlier analysis, Dr. Mayer noted Kuklok's statement that he " 'had a chip on his shoulder during his first 20 years.' " In a March 18, 1983 report, Dr. Mayer notes that prior to the work accidents, Kuklok was under the care of Dr. Olmstead, who at that time diagnosed Kuklok as having an anxiety neurosis. Dr. Mayer concluded, "Brendan still represents somewhat of a diagnostic dilemma."

Dr. Foster treated Kuklok on numerous occasions, the first time in March 1988. Dr. Foster concluded that Kuklok is suffering from a "post-traumatic stress disorder" accompanied by major depression, panic disorder, and agoraphobia. Dr. Foster determined that these psychiatric problems are causally related to the 1981 work accidents, and he recommended that Kuklok be treated with medication and "individualized psychotherapeutic sessions."

Eventually, in 1988, the Bureau referred Kuklok to Dr. Paul Berg, Ph.D., a licensed psychologist practicing in Oakland, California, for a complete evaluation of Kuklok's psychiatric problems. Dr. Berg reviewed all of Kuklok's medical records on file with the Bureau, extensively interviewed Kuklok, and administered various psychological tests. Dr. Berg noted that Kuklok has been diagnosed with different psychiatric conditions by various medical experts, and made his own analysis. He concluded that Kuklok has had "significant emotional problems" which predate his 1981 accidents and that Kuklok has a personality disorder with various psychiatric symptoms that require treatment, but which are not causally related to the 1981 accidents. Dr. Berg noted that Kuklok has a history of alcoholism. He diagnosed Kuklok as having a "severe underlying personality disorder" and concluded that Kuklok needs psychological treatment but that the need for treatment cannot be attributed to the work-related injuries Kuklok sustained in 1981.

On April 8, 1988, the Bureau, wanting another professional opinion about Kuklok's emotional problems, referred Kuklok for a psychiatric evaluation with Dr. Scott McNairy, a practicing psychiatrist in Minneapolis. Dr. McNairy reviewed Kuklok's medical records, and he originally intended to also personally interview Kuklok. However, Kuklok made several telephone calls to McNairy's secretary, inquiring about what would happen if he became violent during the evaluation, and, in an understandable exercise of professional caution, Dr. McNairy then decided that he would interview Kuklok through a series of telephone conversations. Dr. McNairy diagnosed Kuklok as having a paranoid personality disorder, and he concluded that neither work accident in 1981 was a substantial cause of Kuklok's psychiatric problems.

When there is inconsistent medical evidence, the Bureau cannot rely upon evidence favorable to its position without attempting to clarify the inconsistencies. *Moses v. North Dakota Workers Compen-*

*sation Bureau,* 429 N.W.2d 436 (N.D. 1988). Although the Bureau may weigh and resolve conflicting medical opinions, the Bureau must adequately explain its reason for disregarding evidence favorable to the claimant. *DeChandt v. North Dakota Workers Compensation Bureau,* 452 N.W.2d 82 (N.D.1990). The Bureau must explain why it is relying upon medical evidence supporting a denial of benefits, rather than upon conflicting medical evidence that supports an award of benefits. *Jones v. Workers Compensation Bureau,* 461 N.W.2d 273 (N.D.1990).

In its June 30, 1989 order, the Bureau explained why it agreed with the opinions of Dr. Berg and Dr. McNairy that Kuklok's psychiatric disorder was not related to the 1981 accidents:

"In forming his opinions, Dr. Foster relied primarily upon claimant's own history. Dr. Foster did not administer any psychological tests, and he did not review the Veteran's Administration medical records or a number of other medical records and reports relating to treatment and evaluations of the claimant that predated his work injuries.

\*    \*    \*    \*    \*    \*

"The greater weight of the evidence does not indicate that claimant's psychiatric disorders are causally related to his work injuries, or that the work injuries substantially contributed to his psychiatric disorders or symptoms of those disorders. The Bureau bases this finding primarily upon the opinions of Drs. McNairy and Berg, and reasons stated in the reports submitted by Drs. McNairy and Berg and their testimony. The Bureau finds that claimant had a personality disorder that pre-existed his work injuries. Claimant's current symptoms are related to this personality disorder, and there is insufficient substantiation that his symptoms are causally related to the work injuries, or that the work injuries substantially contributed to his current symptoms."

■ The claimant has the burden of establishing the right to participate in benefits from the workers' compensation fund.

*Froysland v. North Dakota Workers Compensation Bureau,* 432 N.W.2d 883 (N.D.1988). We are satisfied that a reasoning mind could conclude that Kuklok's psychiatric problems are not causally related to the 1981 employment accidents. There is credible medical evidence to support that conclusion. The contrary medical evidence, primarily from Dr. Mayer and Dr. Foster, concluding that Kuklok's depression, anxiety, and anger are the result of his employment accidents, was rejected by the Bureau on the ground that it does not adequately account for Kuklok's pre-accident history of psychological problems.

■ We will not substitute our judgment for that of the Bureau in weighing and judging the credibility of medical evidence. *See Kroeplin v. Workers Compensation Bureau,* 434 N.W.2d 351 (N.D.1989). We conclude that the Bureau's finding that Kuklok does not have a compensable psychiatric disorder is supported by a preponderance of the evidence.

■ Kuklok also asserts on appeal that he was denied his due process right to a fair trial before an impartial tribunal. Kuklok acknowledges that the Bureau is presumed to have regularly performed its duty and provided due process, and that it is incumbent upon Kuklok to establish that due process was denied by presenting substantial evidence that the process was tainted. *Froysland v. North Dakota Workers Compensation Bureau,* 432 N.W.2d 883 (N.D.1988).

■ In support of his due process argument, Kuklok states that to find substantial evidence of bias and lack of impartiality "one must only look into the record." However, Kuklok has failed to delineate any specific evidence showing that the Bureau did not afford Kuklok a fair and impartial hearing. Kuklok complains that benefits were delayed and that the final order awarding benefits was not entered until many years after the accidents had occurred. However, there is substantial evidence supporting the Bureau's assertion that Kuklok was not fully cooperative with the Bureau's investigation and evaluation

of the claim. Kuklok has failed to carry the burden of proving that the hearing process was not fair and impartial.

The judgment of the district court affirming the June 30, 1989, order of the Bureau is affirmed.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.