Betty HALSETH, Appellant,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellee.

Civ. No. 930298.

Supreme Court of North Dakota.

March 30, 1994.

Betty Halseth, pro se; submitted on briefs.

Ken R. Sorenson, Asst. Atty. Gen., Bismarck, for appellee; submitted on briefs.

VANDE WALLE, Chief Justice.

Betty Halseth appealed from a district court judgment affirming the decision of the North Dakota Workers Compensation Bureau denying her claim for benefits. We affirm.

Halseth was employed as a school bus driver by Williston (N.D.) School District # 1 (the School District), from December 1982 to May 1989. On May 5, 1989, Halseth took a leave of absence for medical reasons and has not returned to work. Halseth filed an application for workers' compensation benefits on October 5, 1989.

According to Halseth, the van that she drove for the school district during the 1988–89 school year emitted "excessive gas fumes and excessive exhaust fumes", which would "accumulate into interior of vehicle while being used and driven on bus route." Halseth

alleges that exposure to the vehicle's gas and exhaust fumes triggered what has been termed "chemical sensitivity" or "environmental illness," and would cause her to experience a rapid heart rate, shortness of breath, difficulty sleeping, blurred vision and dizziness. Halseth also asserts that she now suffers the symptoms of chemical sensitivity when exposed to any of a number of fumes and substances in her daily life. The symptoms include respiratory problems, a tightening sensation in her neck and chest, a burning sensation on her face, fatigue and dizziness. The substances that cause these reactions are numerous and include automobile exhaust, fresh paint, new clothing, scented cleansers and detergents, perfumes and deodorants, toothpaste, output from gas furnaces, chlorinated water, newsprint, cigarette and cigar smoke, aerosols, spices and seasonings, yeast, rubber and plastic items, dust, glues from stamps and envelopes, and magic markers.

Following a hearing on January 9, 1991, and after the record had been left open for additional evidence and documentation, the Workers Compensation Bureau denied Halseth's claim, concluding that her injury was not compensable under the Workers' Compensation Act.[1] Halseth appealed to the district court, which affirmed. On appeal, Halseth disputes the Bureau's finding that her illness is not causally related to employment with the School District.

A "compensable injury" under the Workers' Compensation Act is "an injury by accident arising out of and in the course of employment," and includes "[a]ny disease which can be fairly traceable to the employment." NDCC § 65-01-02(9). A disease is "fairly traceable to the employment" if it "[a]rises under conditions wherein it is apparent to the rational mind upon consideration of all the circumstances that there is a direct causal connection between the conditions under which the work is performed and the disease;" or if the disease "[c]an be seen to have followed as a natural incident of the work as a result of the exposure occasioned

by the nature of the employment;" or if the disease otherwise "[c]an be fairly traced to the employment". NDCC § 65-01-02(18).

"Ordinary diseases of life to which the general public outside of the employment is exposed" may be compensable if "the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected in the course of ... employment." NDCC § 65-01-02(9)(a)(1). We have stated that it is not necessary that employment be the sole cause of the injury; the injury may be compensable if employment substantially contributes to the injury. NDCC § 65-01-02(9)(b)(6); *Sloan v. N.D. Workers Comp. Bureau*, 462 N.W.2d 638 (N.D.1990); *Satrom v. N.D. Workmen's Comp. Bureau*, 328 N.W.2d 824 (N.D.1982). Nonetheless,

"it is insufficient to afford compensation under this title solely because the employment acted as a trigger to produce symptoms in a latent and underlying condition if the underlying condition would likely have progressed similarly in the absence of such employment trigger, unless the employment trigger is also deemed a substantial aggravating or accelerating factor." NDCC § 65-01-02(9)(b)(6).

▪ The provisions of the Workers' Compensation Act are to be liberally construed in favor of the injured worker. *Effertz v. N.D. Workers' Comp. Bureau*, 481 N.W.2d 218 (N.D.1992). However, the claimant bears the burden of establishing the right to participate in benefits from the workers' compensation fund. NDCC § 65-01-11; *Kuklok v. N.D. Workers' Comp. Bureau*, 492 N.W.2d 572 (N.D.1992). "The Bureau does not have the burden of proving that the claimant is not entitled to benefits, or that the claimant's injury is unrelated to employment." *Wherry v. North Dakota State Hosp.*, 498 N.W.2d 136, 139 (N.D.1993).

▪ On appeal we review the findings of fact and conclusions of law of the Bureau rather than the determinations of the district

---

1. The Bureau's hearing officer rendered his decision based solely on causation grounds, not on grounds that Halseth has not suffered an injury. The medical community's opinion regarding the existence of environmental illness, though addressed in the Bureau's brief to this court, is not at issue.

court. *Meyer v. N.D. Workers Comp. Bureau,* 512 N.W.2d 680 (N.D.1994); *Roggenbuck v. N.D. Workers Comp. Bureau,* 481 N.W.2d 599 (N.D.1992); *Pleinis v. N.D. Workers Comp. Bureau,* 472 N.W.2d 459 (N.D.1991). Under sections 28–32–19 and 28–32–21, NDCC, we will affirm the Bureau's decision unless one of the six enumerated reasons listed in section 28–32–19 for not affirming the decision is found to exist. *Roggenbuck, supra.* Essentially, we must determine whether the record supports the Bureau's findings of fact, whether the findings of fact support the conclusions of law, whether the conclusions of law support the decision, and whether the decision is in accordance with the law. *Rooks v. N.D. Workers' Comp. Bureau,* 506 N.W.2d 78 (N.D.1993); *Darnell v. N.D. Workers Comp. Bureau,* 450 N.W.2d 721 (N.D.1990).

 When reviewing findings of fact, we neither substitute our judgment for that of the Bureau nor make independent findings of fact. *Burrows v. N.D. Workers Comp. Bureau,* 510 N.W.2d 617 (N.D.1994). We uphold the Bureau's findings unless the findings are not supported by a preponderance of the evidence. NDCC § 28–32–19(5); *Thompson v. N.D. Workers' Comp. Bureau,* 490 N.W.2d 248 (N.D.1992). The question on appeal is not whether we would have weighed the evidence differently and reached a different conclusion than that which was reached by the Bureau. *Darnell, supra.* Rather, we will disturb the Bureau's findings of fact only if a reasonable mind could not reasonably find that the weight of the evidence supports the findings. *Wherry, supra; Geo. E. Haggart, Inc. v. N.D. Workmen's Comp. Bureau,* 171 N.W.2d 104 (N.D.1969); *see generally,* Clare Hochhalter & Dean J. Haas, *An Introduction to North Dakota Workers Compensation,* 64 N.D.L.Rev. 173 (1988).

 At the hearing, Halseth testified that she began to have difficulty breathing in March 1989. Prior to that time, Halseth stated, certain colognes or fragrances would cause her eyes to burn, but she had never suffered the respiratory problems or dizziness that currently plague her. Halseth also testified that she smoked cigarettes for approximately fifteen years, but has not smoked since 1974.

Until the onset of her illness, Halseth had driven the van almost every day since the beginning of the school year in September 1988. Halseth contends that the van did not operate properly, as the engine would occasionally stop when the vehicle was stopped at intersections; the engine would continue running after the ignition had been turned off; and the van emitted black smoke. According to Halseth, the van emitted excessive amounts of exhaust and gasoline fumes, and the exposure to exhaust and gas fumes have caused her illness. Corroborating Halseth's testimony regarding the condition of the van is the affidavit of Gertrude Weber, who was a driver for the School District during the 1987–88 school year. Weber stated that she noticed gas fumes in the van during the 1987–88 school year, and that she had suffered headaches because of the fumes. Also, Renae Ginther, who had driven the van on one occasion in March of 1989, stated by affidavit that she, too, had noticed gas fumes in the van. Contradicting this evidence is a letter written by Warren Larson, Assistant Superintendent of Schools for the School District, wherein Larson informed the Bureau that he inspected the van in October of 1989, upon notice of Halseth's workers' compensation claim. Larson wrote that he had spent three hours in the vehicle, driving in a manner similar to the typical school bus excursion. Larson also let the vehicle idle for approximately forty-five minutes, but could find "no evidence of exhaust fumes."

The record also contains conflicting medical reports concerning the cause of Halseth's illness. Among the evidence supporting Halseth's claim were the reports of Kendall Gerdes, M.D., of Environmental Medicine Associates of Denver, Colorado, David Buscher, M.D., of the Northwest Center for Environmental Medicine of Bellevue, Washington, and Jack Thrasher, Ph.D., an immunotoxicologist in Northridge, California. Dr. Gerdes examined Halseth during the week of May 13, 1991, and wrote that he "believe[s] that the exposures encountered in her work as a school bus driver in early 1989, caused

**374**

the condition that she presently suffers from."

Dr. Buscher, basing his conclusion on medical reports and laboratory test results submitted to him, wrote that Halseth's "present medical condition is more likely than not the result of a toxic exposure at work causing a chemically induced medical disability." Dr. Thrasher, relying on medical records and laboratory test results submitted to him, reported that "Mrs. Halseth experienced acute and chronic symptoms consistent with exposure to the vehicle exhaust."

Also in the record is the report of B.K. Patel, M.D., of the Western Dakota Medical Group, Williston, N.D.. Dr. Patel wrote that, around March 9, 1989, "Chest x-ray was done which revealed hyperinflation suggesting chronic obstructive pulmonary disease, that means that she had this problem for quite a long time." Also, on April 6, 1989, "[s]he at that time told [me] that her coughing has been due to bus driving and at that time I told her that the changes in the x-ray that were seen were suggestive of chronic obstructive lung disease which could have been due to her old smoking habits...." Similarly, David W. Ellison, M.D., of the Dakota Clinic, Fargo, N.D., in a letter dated January 29, 1992, wrote, "I know of no research that would show that these findings are the result of an exposure to exhaust fumes prior. Nor do I know of any physiologic process (normal or pathologic) caused by an exposure similar to that described by Ms. Halseth that would manifest itself by these laboratory results or symptoms."

Whether or not we may be inclined to believe that the reports of the experts and other evidence in the record establishes that Halseth's ailments are "fairly traceable" to employment, our review on appeal is limited, and we may not re-weigh the evidence. The Bureau found that the reports favorable to Halseth's claim did not adequately take into account Halseth's sensitivity to certain fragrances prior to her employment with the school district, nor her years of smoking cigarettes. The Bureau explained its reasons for relying on medical evidence supporting a denial of benefits and for not relying on the evidence supporting Halseth's claim. *See*

*Wherry, supra; Kuklok, supra.* The record contains sufficient evidence to conclude that a reasonable mind could reasonably find that her illness was not "fairly traceable" to employment with the School District, or that her employment, at most, "triggered" a pre-existing condition, but did not substantially aggravate or accelerate her illness. NDCC § 65–01–02(9)(b)(6). We believe the Bureau fairly and reasonably construed the evidence in the record to reach a conclusion which we may not overturn under our standard of review.

The judgment of the district court, affirming the decision of the Workers Compensation Bureau to deny Halseth benefits, is affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.