Harvey A. WOLF, Appellee,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

Civ. No. 9453.

Supreme Court of North Dakota.

June 28, 1978.

Rehearing Denied July 7, 1978.

Richard J. Gross, Sp. Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for appellant.

Daniel E. Buchanan, Jamestown, for appellee.

PAULSON, Justice.

This is an appeal by the North Dakota Workmen's Compensation Bureau [hereinafter the Bureau] from the judgment of the Stutsman County District Court entered December 28, 1977, in which the court reversed the Bureau's award of benefits to the claimant, Harvey H. Wolf, on a 50 percent aggravation basis and remanded the case to the Bureau with directions to award Wolf benefits on a 100 percent basis together with costs and attorney fees.

On November 30, 1976, Wolf injured his left knee in the course of his employment with Liechty Mobile Homes at Jamestown. As Wolf was mounting a kap on a pickup he crouched down. This caused a previously torn meniscus in his left knee to tear further and to lodge in his knee joint. As a result his left knee locked into position so that he could not completely straighten his leg. Wolf sought medical treatment on December 1, 1976, from Dr. Ard Mardirosian, who performed a meniseectomy on Wolf's left knee on December 7, 1976, approximately one week after the employment injury.

Wolf filed a compensation and medical expense claim with the Bureau on December 15, 1976. The Bureau entered its findings of fact, conclusions of law, and decision and order on July 13, 1977, in which it found that "the claimant's condition is fifty percent due to a preexisting nonemployment condition and fifty percent due to an employment injury". The Bureau concluded that Wolf was entitled to payment of medical, disability, and permanent impairment benefits on a fifty percent aggravation basis. Wolf appealed from the Bureau's award to the Stutsman County District Court, which court reversed the Bureau's order and entered judgment directing the Bureau to award Wolf benefits on a 100 percent basis. The Bureau now appeals to this court from the judgment of the district court.

Pursuant to § 65–10–01 of the North Dakota Century Code, appeals to the district court from decisions of the Bureau must be taken in the manner provided under the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. The district court's judgment in such a case can be appealed to this court pursuant to § 28–32–21, N.D.C.C., which provides that this court is to review an agency's decision as provided by § 28–32–19, N.D.C.C. Pursuant to § 28–32–19, N.D.C.C., as amended by the Legislature (S.L.1977, ch. 287, § 1), effective July 1, 1977, this court shall affirm the decision of the Bureau unless we find that any of the following is present:

*28–32–19, N.D.C.C.* " . . .

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact."

Prior to the 1977 amendment of § 28–32–19, N.D.C.C., this court upheld those findings of fact by the Bureau which were supported by substantial evidence. *Foss v. North Dakota Workmen's Compensation Bureau*, 214 N.W.2d 519 (N.D.1974). After the 1977 amendment of § 28–32–19, N.D.

C.C., only those findings of fact by the Bureau which are supported by a preponderance of the evidence can be upheld by this court on appeal. To meet this standard, a finding of fact by the Bureau must be supported by the greater weight of the evidence. *Benzmiller v. Swanson,* 117 N.W.2d 281 (N.D.1962).

The Bureau awarded benefits to Wolf on a 50 percent aggravation basis under § 65–05–15, N.D.C.C., which section, prior to its amendment by the Legislature (S.L.1977, ch. 579, § 14), effective July 1, 1977, provided as follows:

"*65–05–15. Aggravation of injury or disease.—Compensation and benefits not paid for pre-existing condition.*—In case of aggravation of an injury or disease existing prior to a compensable injury, compensation, medical, hospital or funeral expenses, or death benefits, shall be allowed by the bureau and paid from the fund only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior disease or injury as reasonably may be attributable to such compensable injury. But any compensation paid on the basis of aggravation shall not be less than ten

dollars per week unless the actual wages of claimant shall be less than ten dollars, in which event the actual wages shall be paid in compensation."

The quoted provisions of § 65–05–15, N.D. C.C., as they existed prior to the 1977 amendment, are applicable to this case.[1]

The Bureau made the following findings of fact:

"I.

"That on the 15th day of December, 1976, the above named claimant filed a claim with this Bureau for compensation and/or medical expenses as the result of an injury (disability) sustained on the 30th day of November, 1976.

"II.

"That the claimant, on the 30th day of November, 1976, was an employee of Liechty Mobile Homes, Jamestown, North Dakota, and the occupation of the claimant was to assemble pickup kaps.

"III.

"That the claimant sustained an injury to his knee while mounting kap on pickup when he crouched and it locked.

1. Section 65–05–15, N.D.C.C., as amended by S.L.1977, ch. 579, § 14, effective July 1, 1977, provides as follows:

"*65–05–15. Aggravation of injury or disease—Compensation and benefits not paid for pre-existing condition.*—Compensation shall not be paid for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition. In case of aggravation of a condition existing prior to a compensable injury, compensation, medical or hospital expenses, or death benefits, shall be allowed by the bureau and paid from the fund only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior condition as reasonably may be attributable to such compensable injury. If the degree of aggravation cannot be determined, the percentage award shall be fifty percent of total benefits recoverable if one hundred percent of the injury had been the result of employment. But any compensation paid on the basis of aggravation shall not be less than ten dollars per week unless the actual wages of claimant shall be less than ten dollars, in which event the actual wages shall be paid in compensation. How-

ever, in case of death due to an employment-aggravated condition, burial expenses and special benefits shall be paid in full pursuant to sections 65–05–17 and 65–05–26."

The Bureau's argument that the newly amended provisions of § 65–05–15, N.D.C.C., should be applied to this case is unpersuasive. The injury for which benefits are claimed by Wolf occurred prior to July 1, 1977, the effective date of the amendment; and the entire record upon which the Bureau based its decision was compiled prior to that date. Thus, the 1977 amendment to § 65–05–15, N.D.C.C., could not be applied to this case even if it were subject to retroactive application. The Bureau asserts that this section is procedural only and therefore can be applied retroactively. We disagree. Section 65–05–15, N.D.C.C., is a substantive provision in that it affects the amount of benefits to which a claimant is entitled. *See, Heddon v. North Dakota Workmen's Comp. Bureau,* 189 N.W.2d 634 (N.D.1971). Furthermore, pursuant to § 1–02–10, N.D.C.C., no part of the North Dakota Century Code is retroactive unless it is expressly declared to be so. *Heddon, supra; Scranton Grain Co. v. Lubbock Machine & Supply Co.,* 186 N.W.2d 449 (N.D. 1971).

"IV.

"That the medical information in the file reveals that the claimant's condition is fifty percent due to a pre-existing non-employment condition and fifty percent due to an employment injury."

From the findings of fact the Bureau concluded that, pursuant to § 65–05–15, N.D.C.C., Wolf was entitled to benefits on a 50 percent aggravation basis.

The record upon which the Bureau has based its order consists primarily of the deposition of Wolf's treating physician, Dr. Ard Mardirosian, who testified that, prior to the November 30, 1976, employment injury, Wolf had chondromalacia of the patella in his left knee, which is a degenerative process involving the bone cartilage. Wolf also had a torn meniscus in his left knee which, according to Dr. Mardirosian's testimony, was probably caused in the past by small injuries in the form of twisting movements at the knee level. For approximately one year prior to his employment injury, Wolf had experienced in his left knee some snapping, clicking, and locking. However, when the knee locked Wolf was able to straighten it out himself. He never considered it necessary to seek medical treatment for this condition which did not in any respect disable him or prevent him from performing his employment. Thus, prior to the employment injury Wolf suffered no disability nor incurred any expense as the result of the condition of his left knee.

As Wolf crouched down while working in the course of his employment on November 30, 1976, his knee locked so that he was unable to straighten his leg without medical attention. Dr. Mardirosian testified that in his opinion Wolf's crouching movement on November 30 caused the meniscus in his left knee to tear further and to lodge in his left knee joint, which in turn caused the knee to lock into position, requiring a meniscectomy to correct the problem. As a result of the extended tear of the meniscus, Wolf was temporarily disabled from continuing his employment, and Dr. Mardirosian testified that Wolf might have a permanent impairment of the left knee as well as an increased susceptibility to arthritis in his knee.

Dr. Mardirosian also testified that the chondromalacia of Wolf's left knee was not connected with nor aggravated by his employment injury on November 30. Dr. Mardirosian further testified that future impairment of Wolf's knee, if any, could be caused, at least in part, by the chondromalacia, but he was unable to give an estimate of future permanent impairment.

Dr. Mardirosian was also asked whether he could give an opinion as to the percentage of benefits to which Wolf was entitled for the disability and expense attributable to his employment injury. He said he could give no opinion, but upon further questioning he testified as follows:

"[Dr. Mardirosian] A Well, medical speaking, you know, I haven't been in practice really long enough to have that much experience as to know about this routine regarding the law and so on.

"Q I fully appreciate that. In fact, you are in no different position than physicians that have been treating for many years.

"A If I have been treating for ten years, I might get some sort of idea, but talking as a person, I think it's fair enough to give him 50 percent."

■ The Bureau apparently concluded that the chondromalacia, together with the preexisting tear of the meniscus, was responsible for 50 percent of Wolf's disability and expense and that the extended tear of the meniscus resulting from the employment injury was also responsible for 50 percent of Wolf's disability and expense. Accordingly, the Bureau awarded Wolf benefits on a 50 percent aggravation basis. We conclude that the Bureau's findings of fact are not supported by a preponderance of the evidence and that the Bureau has misinterpreted § 65–05–15, N.D.C.C., in its application to this case.

Pursuant to the applicable provisions of § 65–05–15, N.D.C.C., which were in force and effect at the time of Wolf's employment injury, when a compensable injury aggravates a preexisting injury or disease

the Bureau shall pay benefits "only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior disease or injury *as reasonably may be attributable to such compensable injury*" [emphasis added]. Upon a careful examination of the record, we conclude that the entire expense incurred and the disability suffered by Wolf is reasonably attributable to his employment injury. Prior to that injury Wolf did not require medical treatment or incur expense for his left knee, nor did he suffer any disability in his left knee from the chondromalacia or the torn meniscus. Subsequent to the employment injury, however, Wolf did suffer disability and did require medical treatment for his left knee. Consequently, Wolf's entire expense and disability can reasonably be attributed to his employment injury.

The case of *Gullickson v. North Dakota W. Comp. Bureau*, 83 N.W.2d 826 (N.D. 1957) is directly in point. In that case the employee filed a claim for disability benefits and medical expenses based upon an injury he sustained to his hip when he slipped and fell in the course of his employment. The claimant had an arthritic condition of the hip which existed prior to his employment injury and which caused him sufficient pain to seek medical advice. However, prior to the employment injury the claimant suffered no disability. Subsequent to the employment injury the claimant suffered disability and required surgery. The Workmen's Compensation Bureau denied the claim for benefits. The district court reversed the Bureau's decision and awarded the claimant full benefits. This court affirmed the district court's judgment with the exception of the partial permanent disability award therein which this court reversed and remanded for additional evidence on the extent of the partial permanent disability suffered by the claimant. In affirming the district court's award of full benefits, this court made the following statement, in *Gullickson, supra* 83 N.W.2d at 832:

"The evidence clearly shows that claimant had a more or less dormant arthritic condition prior to Oct. 31, 1953. It, how-

ever, did not prevent him from carrying on his usual work including the lifting and carrying of quarters and halves of beef, and would not have done so if nothing had happened. After the fall, however, he began to suffer pains, especially in his left hip and had to give up his work. The pains increased to the extent that he had to have the Smith-Peterson cup arthroplasty operation performed. It follows that the operation was not the result of the arthritic condition, but that the fall aggravated that condition and made the operation necessary."

In the instant case, Wolf, like the claimant in *Gullickson, supra,* suffered no disability from his prior existing condition. Wolf's employment injury aggravated his previously torn meniscus and such aggravation caused the disability and necessitated the corrective surgery. Consequently, the disability suffered and the expense incurred by Wolf are, in their entirety, attributable to his employment injury. We conclude that, based upon the record before us, Wolf is entitled to full benefits on a 100 percent basis.

Dr. Mardirosian testified that there may be some impairment of Wolf's left knee in the future which could be caused, at least in part, by the degenerative process of the chondromalacia. Dr. Mardirosian further testified that the chondromalacia is not in any way connected with nor aggravated by his November 30 employment injury. In the event a subsequent claim is filed by Wolf for benefits arising from future impairment of his left knee, the extent of the impairment caused by the chondromalacia, if any, would be determined at that time. Any attempt to resolve that question at this time would be purely advisory and speculative.

■ The district court awarded attorney fees to Wolf's attorney from the Bureau in the amount of $1,328.50. The Bureau requests this court to reverse the award of attorney fees, asserting that Wolf's appeal from the Bureau's order is "without merit and frivolous". We conclude that the Bu-

reau's assertion is unpersuasive and without merit.

In accordance with this opinion, the judgment of the district court is in all things affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.