Rollin BALLIET, Appellee,

v.

NORTH DAKOTA WORKMEN'S COM-
PENSATION BUREAU, Appellant.

Agnes BALLIET, Appellee,

v.

NORTH DAKOTA WORKMEN'S COM-
PENSATION BUREAU, Appellant.

Civ. Nos. 9799, 9800.

Supreme Court of North Dakota.

Oct. 7, 1980.

Chapman & Chapman, Bismarck, for appellees; argued by Daniel J. Chapman, Bismarck.

Richard J. Gross, Sp. Asst. Atty. Gen., Workmen's Compensation Bureau, Bismarck, for appellant.

PEDERSON, Justice.

The Workmen's Compensation Bureau appeals from a district court consolidated judgment to increase awards made by the Bureau. The Bureau originally awarded compensation on a 50% aggravation basis in a medical expense claim filed by Rollin Balliet and a death benefit claim filed by Agnes Balliet after the death of Rollin Balliet. The district court, finding problems with both the aggravation statute and the Bureau's construction of it, ordered the granting of full benefits. We reverse the judgment and order the reinstatement of the Bureau's awards.

Rollin Balliet worked for Soil Exploration Company of Bismarck. After an absence occasioned by a back injury, Mr. Balliet returned to his job on February 14, 1978. That same day Mr. Balliet engaged in some rather arduous physical labor and put in four hours of overtime. He experienced severe chest pains that evening and entered the hospital early the next day. A major heart attack followed and, on March 12, Mr. Balliet died.

Mr. Balliet's physician, Dr. Dunnigan, stated several times that Mr. Balliet's heart attack was a clear result of his employment, in particular of the acts of employment carried out on February 14. Dr. Dunnigan

further stated that Mr. Balliet's medical history and condition also had a clear connection with the attack. About five years before his death, Mr. Balliet suffered a heart attack and was diagnosed by Dr. Dunnigan as having coronary artery disease. Nitroglycerin was prescribed in treatment at that time. Subsequently he was diagnosed with and treated for hypertension and high blood pressure. Mr. Balliet was also considered obese and was told that he should lose weight. According to Dr. Dunnigan, Mr. Balliet was instructed not to return to work on February 14, 1978, unless he avoided any strenuous labor. This warning was based not only on Mr. Balliet's back condition but also on the fact "that he wasn't in a condition from the standpoint of a cardiac status to be put into a common labor situation." In conclusion, Dr. Dunnigan stated:

> "... he (Mr. Balliet) had known coronary artery disease, and it is not even unreasonable to assume that had he--I not even allowed him to go to work--had he not even worked that day, he still could have suffered that coronary and that heart attack and died because he was predisposed to this. There seems to be a relationship (with his work), however, because of the fact that he was doing heavier work than we allowed him to do and the chest pain occurred toward the end of that work day and he went on and developed a heart attack."

The Bureau found that Mr. Balliet's heart attack and death resulted from both employment and a preexisting heart condition. The presence of a preexisting condition requires application of the aggravation statute. When Dr. Dunnigan was unable to determine precisely what share each cause had in Mr. Balliet's fatal attack, the Bureau, pursuant to the statute, awarded 50% of the benefits otherwise payable.

■ Our review in this case is, of course, limited to the Bureau's decision. *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692 (N.D.1979). The standards applicable to this review are set forth in § 28–32–19, NDCC. We are authorized to overturn a Bureau ruling if:

(1) The decision or determination is not in accordance with the law.

(2) The decision is in violation of the constitutional rights of the appellant.

(3) Provisions of this chapter have not been complied with in the proceedings before the agency.

(4) The rules or procedure of the agency have not afforded the appellant a fair hearing.

(5) The findings of fact made by the agency are not supported by a preponderance of the evidence.

(6) The conclusions and decision of the agency are not supported by its findings of fact.

■ The aggravation--preexisting condition statute is § 65--05--15, NDCC. It reads, in part:

> "65 05 15. Aggravation of injury or disease Compensation and benefits not paid for preexisting condition. Compensation shall not be paid for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition. In case of aggravation of a condition existing prior to a compensable injury, compensation, medical or hospital expenses, or death benefits, shall be allowed by the bureau and paid from the fund only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior condition as reasonably may be attributable to such compensable injury. If the degree of aggravation cannot be determined, the percentage award shall be fifty percent of total benefits recoverable if one hundred percent of the injury had been the result of employment."

Prior to July 1, 1977, this section read:

> "In case of aggravation of an injury or disease existing prior to a compensable injury, compensation, medical, hospital or funeral expenses, or death benefits, shall be allowed by the bureau and paid from the fund only for such proportion of the

disability, death benefits, or expense arising from the aggravation of such prior disease or injury as reasonably may be attributable to such compensable injury."

Additionally, the first line of the new provision was, before July 1, 1977, contained in § 65–01–02(8)(a), NDCC, and read:

"Compensation shall not be paid, however, for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition." [1]

■ Initially we must set some constraints on the Bureau's interpretation of the word "condition" which was substituted in 1977 for the words "injury or disease." The Bureau has argued before the district court and in its brief to this court that "condition" entails states of nonimpairment in addition to actual impairment or disability. We must agree with the district court that use of the word "condition," however else it alters the meaning of the pre 1977 law, does not allow the Bureau to prorate benefits in a case where the claimant had no previous impairment.

■ Though the first line of the provision suggests a distinction to be made between conditions disabling and nondisabling, we construe it to refer to disabling ones only. Thus compensation is denied for any pre–injury costs associated with a disability, and for post–injury costs apportionable to a preexisting and disabling condition. To activate the statute, a preexisting condition has to be accompanied by an actual impairment or disability known in advance of the work-related injury. There must, of course, be a point at which it can be determined that a significant preexisting condition, in fact, exists. Putatively, almost *every* injury could, with sufficient scrutiny, be linked to some preexisting weakness or susceptibility. See, Larson, *Workman's Compensation Law*, Vol. 1, § 12.20, at 3-333. To read "condition" so broadly would vest an unacceptable amount of discretion in the Bureau and threaten the express policy of construing the Workmen's Compensation Act liberally in favor of the workman. *Booke v. Workmen's Compensation Bureau*, 70 N.D. 714, 297 N.W. 779 (1941). A liberal construction in favor of the workman requires that we construe all provisions of the statute, if possible, so as to avoid forfeiture and afford relief. *Bordson v. North Dak. Workmen's Compensation Bureau*, 49 N.D. 534, 191 N.W. 839, 841 (1923). By tying "condition" to a specific and disabling state of health, we think a fair standard is established.[2] In the absence of impairment, the statute does not allow for apportionment by the Bureau.

This is really no more than we said in *Wolf v. N.D. Workmen's Comp. Bureau*, 267 N.W.2d 785 (N.D.1978), which was decided under the earlier version of § 65–05-15. In that case, Wolf, before his injury, experienced certain symptoms but he was never disabled nor had he ever sought treatment. Only after his work-related injury did he

---

1. As found in § 65–01–02(8)(a), before July 1, 1977, this provision, and specifically the word "condition", was limited to preexisting disease. *Stout v. N.D. Workmen's Compensation Bureau*, 236 N.W.2d 889, 894 (N.D.1975). In the new context of § 65–05–15, this limitation is not applicable. The title to the latter provision alone indicates that the word "condition" signifies more than disease. For cases arising after July 1, 1977, the amended § 65–01–02(8)(a) provides:

"Any disease which can be fairly traceable to the employment. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected in the course of his employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease includes impairment and effects from radiation fairly traceable to the employment. It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

2. The Bureau has complained that the aggravation statute is especially difficult to administer. Presumably this difficulty is in precisely determining causes and apportioning awards. A rule requiring that an impairment accompany a preexisting condition will help simplify this task.

sustain a disability. This court allowed Wolf full, unapportioned recovery. Substitution of the word "condition" does not alter that holding.

■ Preserved also is our decision in *Stout v. N.D. Workmen's Compensation Bureau*, 236 N.W.2d 889 (N.D.1975). (*Stout I*). That case involved a heart attack suffered by a workman who had no history of coronary problems. The Bureau denied benefits because it thought there was a disqualifying prior condition. Because the Bureau failed to present evidence of an actual preexisting condition that impaired Stout's capacities, we reversed. We adhere to the view that an employer takes the employee as he finds him. To the extent, however, that *Stout I*, or any other case, is read to apply this to an actual disability, so that full recovery would be allowable even where an employee is to some degree disabled before his injury, it is overruled as inconsistent with the present aggravation statute.

Having so construed the statute, we proceed to the substance of the Bureau's ruling in this case as it concerns the claim for death benefits. Appellee Agnes Balliet believes that the 1977 amendment to the aggravation statute did not change the law expressed in *Stout I* and *Wolf* and, as stated above, we agree. Instead she reads § 65–05–15 as, in essence, having no application to an employment injury resulting in death. Appellee states that the "condition" for which she seeks recovery is the *death* of Rollin Balliet and that because Mr. Balliet was not dead before his work–related injury there was no preexisting condition.

■ Words and phrases should not be isolated and defined out of context, but will be construed in connection with the statute in which they are used. See § 1–02–03, NDCC, and *State v. Unterseher*, 289 N.W.2d 201 (N.D.1980). Justice Oliver Wendell Holmes, in *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918), put it more eloquently:

"A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

The statute says, "compensation shall not be paid for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition." Further, "in case of aggravation of a condition existing prior to a compensable injury ... death benefits ... shall be allowed ... only for such proportion of ... death benefits ... arising from the aggravation of such prior condition as reasonably may be attributable to such compensable injury." Appellee argues that because compensation (death benefits) is sought solely for death it is unaffected by any prior condition. In other words, death is not, according to the statute, a "condition which existed prior to the happening of a compensable injury" or an "aggravation of such prior condition." Appellee believes death is a new state unaccounted for by the wording of the statute, and thus full benefits are due.

The provision states that "compensation shall not be paid ... for any disability chargeable to such condition." Death, being clearly a disability, is to be linked to causes. Benefits are paid in proportion to the significance of the work related cause. This construction is especially reasonable in light of the express directive in § 65–05–15 that death benefits are to be prorated. How the statute could command proration of death benefits and simultaneously be inapplicable to injuries resulting in death has not been explained by the appellee.

■ Because § 65–05–15, strictly construed in a case involving compensation for death, is arguably ambiguous and even contradictory, we must seek to ascertain the legislative intent. *Barnes Cty. Ed. Ass'n v. Barnes Cty. Sp. Ed.*, 276 N.W.2d 247, 249 (N.D.1979). However unfortunate the drafting of the statute may be, the intent of the Legislature is, we believe, clear. The very presence of an aggravation statute demonstrates a policy of apportionment. It has not been argued that the Legislature intended specifically to exempt fatal inju-

ries from apportionment, and there is no obvious rationale for such an exemption. We therefore reject appellee's interpretation and find the aggravation statute applicable to a death benefit claim. See, *Stout v. N.D. Workmen's Comp. Bur.*, 253 N.W.2d 429, 430 (N.D.1977) (*Stout II*).

Only questions of fact remain. Was Mr. Balliet's heart attack a work–related accident? And, if so, was there a preexisting disabling condition sufficiently established by the Bureau to serve as a basis for apportionment of medical expenses and death benefits? These questions have been answered by the Bureau in the affirmative. Our review is limited, under § 28–32–19, NDCC, to determine whether or not the Bureau's findings of fact are "supported by a preponderance of the evidence." See *Wolf, supra*, 267 N.W.2d at 787.

■ We conclude that the Bureau's findings are supported by the preponderance of the evidence. Mr. Balliet's heart attack and death were causally related to unusually strenuous employment [§ 65–01–02(8)]. There was a preexisting, disabling condition causally related to Mr. Balliet's heart attack and death. Mr. Balliet's medical history,

even when considered by one untrained, is arguably sufficient alone to support a conclusion that his work capacity was significantly impaired. Mr. Balliet was under Dr. Dunnigan's express order not to engage in the work he did on February 14, and the reason behind Dr. Dunnigan's warning corresponds precisely with the cause of his death. The Bureau was within its authority to invoke the apportionment rule.

■ Because Dr. Dunnigan was of the opinion that no precise proration was possible, the Bureau had no choice but to award 50% of the benefits otherwise due. Section 65–05–15.

The judgment of the district court is reversed, and the Bureau's orders are reinstated.

ERICKSTAD, C. J., and PAULSON, VANDE WALLE and SAND, JJ., concur.