1999 ND 116

**Timothy BRUNS, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**F & S Manufacturing, Inc., Respondent.**

No. 980298.

Supreme Court of North Dakota.

June 18, 1999.

Daniel E. Phillips, Schneider, Schneider & Phillips, Fargo, for claimant and appellant.

Leo F.J. Wilking, Special Assistant Attorney General, Fargo, for appellee.

SANDSTROM, Justice.

[¶ 1] Timothy Bruns appeals from a judgment affirming the North Dakota Workers Compensation Bureau's order accepting Bruns's claim for benefits on a 67 percent aggravation basis. We affirm, holding the Bureau properly applied the aggravation statute, N.D.C.C. § 65–05–15.

I

[¶ 2] Beginning in 1986, Bruns suffered non-work-related injuries to his right knee on seven separate occasions. In 1986, 1987, and 1993, he underwent surgeries on his knee, including ligament reconstruction and implanting of a prosthetic ligament. Following the 1993 surgery Bruns's ortho-pedic surgeon, Dr. R. Mark Askew, diagnosed traumatic chondromalacia, damage to the cartilage, in Bruns's right knee.

[¶ 3] On June 7, 1995, Bruns injured his right knee at work, resulting in tears of the medial and lateral menisci and aggravation of his chondromalacia. Dr. Askew performed arthroscopic surgery to repair the torn menisci and to perform "debridement and microfracture" necessitated by the chondromalacia.

[¶ 4] Bruns filed a claim for benefits with the Bureau. The Bureau's orthopedic consultant, Dr. Ralph Kilzer, concluded Bruns's chondromalacia was a preexisting condition which had been aggravated by the work injury, and determined the work injury was two-thirds of the cause and the chondromalacia was one-third of the cause.

[¶ 5] On March 8, 1996, the Bureau, in accordance with N.D.C.C. § 65–05–15, ordered payment in full of Bruns's medical expenses and temporary total disability during the acute stage, but apportioned benefits at 67 percent following the acute stage. Bruns requested a rehearing, and a hearing was held on September 5, 1996, before an administrative law judge (ALJ). The ALJ found Bruns's chondromalacia was a preexisting condition warranting application of the aggravation statute and issued recommended findings of fact, conclusions of law, and order, recommending benefits after the acute stage on a 67 percent basis. The Bureau adopted the ALJ's findings, conclusions, and order. Bruns appealed to the district court, which affirmed the Bureau's order. Bruns appealed to this Court.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15, and 65–10–01. The appeal was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–21.

## II

[¶ 7] In an appeal from a judgment involving the decision of an administrative agency, we review the decision of the agency and not the decision of the district court. N.D.C.C. § 28–32–21; *Saakian v. North Dakota Workers Compensation Bureau*, 1998 ND 227, ¶ 9, 587 N.W.2d 166; *Nemec v. North Dakota Workers Compensation Bureau*, 543 N.W.2d 233, 237 (N.D.1996). Under N.D.C.C. §§ 28–32–19 and 28–32–21, we must affirm the agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or the agency's rules or procedure deprived the claimant of a fair hearing. *Saakian*, at ¶ 9. In determining whether the agency's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Nemec*, at 237.

## III

[¶ 8] Bruns argues the Bureau erred in applying the aggravation statute, N.D.C.C. § 65–05–15, to his injury, and he should be entitled to full benefits. At the time of Bruns's work injury, N.D.C.C. § 65–05–15 [1] provided, in part:

*Aggravation awards.* The bureau shall calculate an aggravation award in case of aggravation of a preexisting condition, disease, or infirmity by a compensable injury, and in case of aggravation of a compensable injury by a nonemployment injury, on the following terms:

1. A "preexisting condition" means disability or impairment known in advance of the work injury. It is sufficient to invoke the aggravation statute if the preexisting condition is active at the time of the work injury, evidenced by work restriction (active disability) or interference with function (active impairment).

2. In cases of preexisting condition, aggravated by compensable injury, the bureau shall pay medical expense to treat the acute injury in full. If evidence establishes that the preexisting condition has combined with the work injury, and will necessitate further treatment beyond the acute stage, an aggravation award may be invoked as to the remainder of the medical expense award. Likewise, the bureau shall pay temporary total disability to the worker, during the acute disability phase, in full. When the worker reaches maximum medical recovery, and is awarded permanent partial impairment, partial disability, permanent total disability, or vocational retraining services, and the evidence establishes that the preexisting condition has combined with the work injury to produce the continuing disability, an aggravation award may be invoked.

. . . .

4. The bureau shall determine the aggravation award based upon all evidence, as reasonably establishes the proportion or percentage of cause as is reasonably attributable to the compensable injury. If the degree of aggravation cannot be determined, the percentage award must be fifty percent of the total benefits recoverable if one hundred percent of the injury had been the result of employment.

1. Section 65–05–15, N.D.C.C., was amended in 1997. *See* 1997 N.D. Sess. Laws ch. 544,

§ 1. The parties agree the 1997 amendment does not apply in this case.

## A

[¶ 9] Bruns argues the Bureau should not have applied the aggravation statute because the meniscal tears in his knee constituted a "new injury" and his traumatic chondromalacia was wholly unrelated. He stresses, "but for" the 1995 work injury resulting in the meniscal tears, he would not have sought medical treatment leading to the arthroscopic surgery.

[¶ 10] Bruns's argument misinterprets the aggravation statute and mischaracterizes the evidence in this case. Merely because the work injury constitutes a "new injury" does not mean the aggravation statute cannot, as a matter of law, be applied. The language of the statute itself contemplates it applies in situations where "the preexisting condition has combined with the work injury." N.D.C.C. § 65–05–15(2). The record in this case establishes the "new" work injury "combined with" the preexisting chondromalacia, resulting in aggravation of the preexisting condition. Both Dr. Askew and Dr. Kilzer agreed the 1995 work injury aggravated Bruns's chondromalacia. It is undisputed the 1995 arthroscopic surgery included debridement and microfracture of the preexisting chondromalacia, as well as repair of the meniscal tears.

[¶ 11] Furthermore, we note the aggravation statute specifically provides for payment in full of all medical expenses and temporary disability during the acute stage of the injury. Thus, the Bureau paid all of Bruns's medical expenses, including the full cost of the arthroscopic surgery, through January 23, 1996, a period of nearly eight months after the work injury. The aggravation statute, by its terms, applies only to benefits payable after the claimant achieves maximum medical recovery. *See* N.D.C.C. § 65–05–15(2). The only items subject to the 67 percent apportionment in this case are future medical expenses and future disability payments.

[¶ 12] We conclude the aggravation statute applies when a "new" work injury "combines with" and aggravates a preexisting condition.

## B

[¶ 13] Bruns argues his chondromalacia was not a preexisting condition as defined in N.D.C.C. § 65–05–15(1). Bruns argues it can only be a preexisting condition if it constitutes a "permanent impairment," and the evidence in this case did not establish his chondromalacia constituted an active impairment at the time of his work injury.

[¶ 14] Under the aggravation statute, a "preexisting condition" is a known disability or impairment which is active at the time of the work injury, as evidenced by "work restriction (active disability) or interference with function (active impairment)." N.D.C.C. § 65–05–15(1). The Bureau concedes there was no work restriction or active disability in this case. It relies upon evidence of "interference with function (active impairment)" as the basis for apportioning benefits.

### 1

[¶ 15] Bruns, relying on *Jepson v. North Dakota Workmen's Compensation Bureau*, 417 N.W.2d 184 (N.D.App.1987), argues the active impairment that must be shown under the statute is "permanent impairment" as defined in N.D.C.C. § 65–01–02(26). *Jepson* applied the pre–1989 version of the aggravation statute, which this Court has interpreted to require proof of actual disability that impaired the work capacity of the claimant. *See, e.g., Sloan v. North Dakota Workers Compensation Bureau*, 462 N.W.2d 638, 643 (N.D.1990); *Elliott v. North Dakota Workers Compensation Bureau*, 435 N.W.2d 695, 698 (N.D. 1989); *Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791, 794–95 (N.D.1980).

[¶ 16] The 1989 amendment, however, created a separate basis for finding a preexisting condition: "interference with

function (active impairment)." If we were to interpret this language to require proof of a "permanent impairment" under N.D.C.C. § 65–01–02(26), which is defined as "loss of or loss of use of a member of the body," "active impairment" would be subsumed in "active disability." We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage. *Zueger v. North Dakota Workers Compensation Bureau*, 1998 ND 175, ¶ 12, 584 N.W.2d 530; *First State Bank v. Moen Enterprises*, 529 N.W.2d 887, 891 (N.D. 1995). The legislature was well aware of the statutory term "permanent impairment" and used "active impairment" instead. The legislature further clarified its intent by using the language "interference with function," which suggests an impairment less severe than "loss of or loss of use of a member of the body." *Compare* N.D.C.C. § 65–05–15(1) *with* N.D.C.C. § 65–01–02(26). We conclude "active impairment" under N.D.C.C. § 65–05–15(1) does not require proof of "permanent impairment." [2]

2

[¶ 17] Bruns argues the record does not support the Bureau's finding his traumatic chondromalacia was a preexisting condition, contending there is no evidence of interference with function or active impairment.

[¶ 18] The record contains conflicting evidence on whether Bruns's chondromalacia interfered with function of his knee or constituted an active impairment at the time of his work injury. The record in-

cludes Bruns's lengthy medical history, which documents the numerous prior injuries and surgeries to his right knee. One year prior to the work injury, his physical therapist reported Bruns was still suffering from "intermittent pain just below the knee cap during his working day, most notably when he is lifting from waist level or below"; he avoids "twisting on his knee as much as possible," and experiences "an intermittent 'shift' sensation in his knee if he accidentally pivots or sometimes when he is swinging his lower leg"; "[m]ild laxity" was noted in the knee; and, "[a]fter testing, he did demonstrate mild favoring of the right lower extremity due to reported discomfort over the region of the incre-patellar tendon."

[¶ 19] Dr. Kilzer, an orthopedic surgeon, testified at the hearing Bruns's chondromalacia was a continuing condition, active at the time of the work injury. Dr. Kilzer further testified:

Q: (Mr. Albrecht continuing) Was this preexisting condition active at the time of the work injury?

A. Yes, he did have chondromalacia and he did have laxity before and at the time of the injury.

Q. And was there—was this preexisting condition, did it interfere with the normal functioning of the knee? Was there an active impairment?

A. Yes, there was.

[¶ 20] Bruns points to other evidence in the record indicating his chondromalacia was not interfering with the function of his knee at the time of the work injury, and challenges the credibility

2. We reiterate, however, the employer still "takes the employee as he finds him." *Nelson v. North Dakota Workmen's Compensation Bureau*, 316 N.W.2d 790, 795 (N.D.1982); *Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791, 795 (N.D. 1980). The Bureau concedes it must show more than a "de minimis" impairment to satisfy the aggravation statute. The legislative history of the 1989 amendment to N.D.C.C. § 65–05–15 indicates the impair- ment must be a "substantial contributing cause" of the claimant's medical problem, and the aggravation statute is only to be applied "when a substantial portion of the condition is attributable to a pre-existing condition." *Hearing on S.B. 2237 Before the Senate Industry, Business & Labor Comm.*, 51st N.D. Legis. Sess. (Jan. 10, 1989) (written testimony of Dean J. Haas, Assistant Attorney General for the Bureau).

of Dr. Kilzer's opinion. In particular, Bruns argues his testimony he was not suffering impairment and his knee felt fine prior to the work injury was undisputed, and the Bureau therefore could not find active impairment or interference with function. Those are matters which go to the weight of the evidence, and the Bureau is not bound by Bruns's testimony about how his knee felt. It is within the province of the Bureau, not the courts, to weigh conflicting medical opinions, assess the credibility of the witnesses, and resolve conflicts in the evidence. *Theige v. North Dakota Workers Compensation Bureau*, 1997 ND 160, ¶ 9, 567 N.W.2d 334; *Otto v. North Dakota Workers Compensation Bureau*, 533 N.W.2d 703, 706 (N.D.1995). We do not make independent findings or substitute our judgment for that of the Bureau. *Nemec v. North Dakota Workers Compensation Bureau*, 543 N.W.2d 233, 237 (N.D.1996).

[¶ 21] We conclude a reasoning mind reasonably could have determined the Bureau's finding Bruns's traumatic chondromalacia was a preexisting condition was proven by the evidence from the entire record.

### C

[¶ 22] Bruns argues the Bureau improperly relied upon Dr. Kilzer's testimony that Bruns's traumatic chondromalacia made him more susceptible to the meniscal tears he suffered from the work injury. He argues evidence a prior condition makes a worker more prone to a particular type of injury is insufficient to trigger the aggravation statute.[3]

[¶ 23] In this case, however, there is no indication the Bureau improperly relied upon this evidence in finding Bruns's traumatic chondromalacia was a preexisting condition aggravated by the work injury. The findings of fact and conclusions of law

contain no reference to Dr. Kilzer's opinion Bruns was more susceptible to future injury because of the underlying chondromalacia. We therefore conclude the record does not demonstrate the Bureau relied upon an improper factor in reaching its findings and conclusions.

### IV

[¶ 24] The other issues raised by Bruns are without merit. We affirm the judgment upholding the Bureau's order.

[¶ 25] VANDE WALLE, C.J., and NEUMANN and KAPSNER, JJ., concur.

MARING, Justice, specially concurring.

[¶ 26] I agree with the majority that on the record of this case a reasoning mind reasonably could have determined the Bureau's finding that Bruns' traumatic chondromalacia was a "preexisting condition" was proven by a preponderance of the evidence.

[¶ 27] I write, however, because I disagree with the majority's conclusions at ¶ 16: "If we were to interpret this language to require proof of a 'permanent impairment' under N.D.C.C. § 65–01–02(26), which is defined as 'loss of or loss of use of a member of the body,' 'active impairment' would be subsumed in 'active disability'" and "'active impairment' under N.D.C.C. § 65–05–15(1) does not require proof of 'permanent impairment.'" Permanent impairment is defined under the workers compensation statutes as "loss of or loss of use of a member of the body." N.D.C.C. § 65–01–02(26). "Interference with function (active impairment)" is "loss of use of a member of the body." *See Jepson v. North Dakota Workmen's Compensation Bureau*, 417 N.W.2d 184, 185 (N.D.App.1987) (concluding a preexisting condition must be accompanied by an "ac-

---

**3.** The legislative history of the 1989 amendment to the aggravation statute supports Bruns's argument: "susceptibility to injury is insufficient to invoke the aggravation statute."

*Hearing on S.B. 2237, supra* (written testimony of Dean J. Haas, Assistant Attorney General for the Bureau).

tual impairment" and a prorating of benefits based on aggravation is appropriate "only if the condition constituted permanent impairment" or "loss of use of a member of the body").

[¶ 28] Interference with function (active impairment) is different than "work restriction (active disability)." The legislature clearly indicates in the aggravation statute its recognition of this distinction by its use of the word "or" between "disability" and "impairment." N.D.C.C. § 65–05–15(1). " 'Disability' is defined in N.D.C.C. § 65–01–02(13) (1995) as 'loss of earnings capacity and may be permanent total, temporary total or partial.' " *Saakian v. N.D. Workers Compensation Bureau,* 1998 ND 227, ¶ 23, 587 N.W.2d 166. " '[T]otal disability' exists when a worker is unable, solely because of a job related injury, to perform or obtain any substantial amount of labor in that particular line of work, or in any other for which the worker would be fitted." *Id.* (citation omitted). Disability within the Workers Compensation context is an inability to perform one's job.

[¶ 29] The legislature has, therefore, distinguished between a condition causing loss of the ability to work and a condition causing the loss of the use of a member of the body under N.D.C.C. § 65–05–15(1). Evidence of either at the time of the work injury is sufficient to establish a preexisting condition for aggravation purposes.

[¶ 30] The medical evidence in this case of pain limiting normal function and laxity of the knee is arguably sufficient to support a conclusion that Bruns suffered from an "interference with function of" or "loss of use of" or "permanent impairment" of his knee satisfying the requirements of a "preexisting condition" under the statute.

[¶ 31] Thus I concur in the result reached by the majority, but not with the reasoning.

[¶ 32] Mary Muehlen Maring