2000 ND 67

**Diane MIKKELSON, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellee,**

and

**Garrison Public School, Respondent.**

**No. 990309.**

Supreme Court of North Dakota.

April 5, 2000.

Rehearing Denied May 11, 2000.

I

[¶ 2] Mikkelson applied for workers compensation benefits in connection with an October 6, 1997 back and neck injury she suffered when lifting a developmentally disabled child from a wheelchair while employed as a teacher's aide by the Garrison Public School District. A chiropractor who treated Mikkelson on October 10, 1997, advised her to not work from October 10 until October 20, 1997, but said she could return to work from October 20 until October 27, 1997, provided she perform only "[l]ight [m]edium [w]ork" during that period of time with no work restriction thereafter. On October 24, 1997, Mikkelson resigned from her position with the Garrison Public School District because of her "recent injury ... and the nature of the job I must do...." In November 1997, Mikkelson was diagnosed with "[u]pper thoracic back pains" and was referred for physical therapy treatments.

[¶ 3] In a prior injury questionnaire, Mikkelson stated she had injured her neck and back in a June 1993 car accident. The Bureau referred Mikkelson to Dr. Gary Dilla, a physical medicine specialist, for an independent medical evaluation. From his January 15, 1998 evaluation, Dr. Dilla found Mikkelson's "[c]urrent history and examination findings [are] highly consistent with diagnosis of possible fibromyalgia." Dr. Dilla described Mikkelson's complaints as "diffuse," including achiness between her shoulder blades and pain radiating "into the neck and shoulder region bilaterally" and into her low back. Mikkelson also reported occasional pain into her right forearm and into the left medial knee to the ankle. Dr. Dilla said "the thoracic strain suffered by [Mikkelson] would be consistent with the type of lifting injury she describes dated 10/06/97."

[¶ 4] Dr. Dilla also reviewed Mikkelson's prior medical records relating to her June 1993 car accident. Mikkelson's symptoms at the time "included neck pain, particular-

Dean J. Haas, Dietz, Little & Haas, Bismarck, N.D., for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Diane Mikkelson appealed from a judgment affirming a Workers Compensation Bureau order awarding her benefits on a 50 percent aggravation basis, and denying disability benefits after October 27, 1997. We conclude the Bureau correctly applied the aggravation statute, N.D.C.C. § 65–05–15, and did not err in limiting her disability benefits. We affirm.

ly on the right side, pain in the thoracic area, muscle spasms in the thoracic area which is the most painful area to her, [and] pain in the lumbar spine which is constant and bilateral." Physical therapy notes from 1993 indicated "a lot of modalities were being given to treat multiple trigger points throughout the cervical, thoracic and lumbar area." Physical therapy notes from January through May 4, 1994 also indicated "[t]here were a lot of treatments being given into the upper trapezius area and also the parascapular area between the shoulder blades." Dr. Dilla said "the condition which [Mikkelson] currently has was at least in some fashion pre-existent to the 10/06/97 date."

[¶ 5] The Bureau ordered payment of "reasonable and necessary medical expenses directly related to treatment of [Mikkelson's] October 6, 1997, thoracic strain/sprain" and found she was entitled to disability benefits from October 10 through October 27, 1997. The Bureau also concluded, however, Mikkelson failed to prove "her problems with her neck, low back, [and] fibromyalgia . . . are related to her October 6, 1997, injury . . . ." Mikkelson requested a formal hearing.

[¶ 6] Following the hearing, the Administrative Law Judge ("ALJ") recommended finding Mikkelson sustained an injury arising out of and in the course of her employment on October 6, 1997, involving "a thoracic sprain/strain and the acceleration of [her] pre-existing condition into fibromyalgia;" Mikkelson's pre-existing condition had been aggravated by the work injury, entitling her to benefits on a 50 percent aggravation basis; and Mikkelson failed to establish any entitlement to disability benefits after October 27, 1997. The ALJ recommended remanding to the Bureau for further evidentiary development and decision on "whether [Mikkelson] is still in the period of acute care, or whether that time period ended sometime between January 15, 1998, and the present . . . ." The Bureau adopted the ALJ's recommended findings and conclusions,

and the district court affirmed the Bureau's order.

## II

[¶ 7] On appeal, we review the Bureau's decision, not the district court's decision. *Hein v. North Dakota Workers Compensation Bureau*, 1999 ND 200, ¶ 13, 601 N.W.2d 576. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or its rules or procedure deprived the claimant of a fair hearing. *Saakian v. North Dakota Workers Compensation Bureau*, 1998 ND 227, ¶ 9, 587 N.W.2d 166. In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we exercise restraint and do not make independent findings or substitute our judgment for that of the Bureau, but determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Renault v. North Dakota Workers Compensation Bureau*, 1999 ND 187, ¶ 16, 601 N.W.2d 580.

### A

[¶ 8] Mikkelson argues the Bureau erred in applying the aggravation statute, now codified at N.D.C.C. § 65–05–15, to her claim for benefits.

[¶ 9] This Court has for many years dealt with various versions of the aggravation statute. When originally enacted in 1931, the aggravation statute allowed compensation in the case of preexisting diseases "only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributable to the injury." 1931 N.D. Sess. Laws ch. 312, § 1. The statute remained essentially the same for almost 50 years. This Court

construed the early version of the statute to apply only when the injured worker suffered "disability" from the preexisting disease or injury and not when a dormant preexisting disease or injury was present. *See Wolf v. North Dakota Workmen's Compensation Bureau*, 267 N.W.2d 785, 789 (N.D.1978); *Gullickson v. North Dakota Workmen's Compensation Bureau*, 83 N.W.2d 826, 832 (N.D.1957); *Tweten v. North Dakota Workmen's Compensation Bureau*, 69 N.D. 369, 381–82, 287 N.W. 304, 310–11 (1939).

[¶ 10] In 1977, the Legislature amended the aggravation statute to say "[c]ompensation shall not be paid for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition," and set 50 percent as the percentage award "[i]f the degree of aggravation cannot be determined...." 1977 N.D. Sess. Laws ch. 579, § 14. The statute continued to allow an aggravation award "only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior condition as reasonably may be attributable to such compensable injury." *Id.* In a series of cases, this Court and the Court of Appeal held this version of the aggravation statute could be used to apportion benefits only if the preexisting condition was known in advance of the work-related injury and resulted in an actual disability that significantly impaired the work capacity of the claimant. *See Sloan v. North Dakota Workers Compensation Bureau*, 462 N.W.2d 638, 643 (N.D.1990); *Elliott v. North Dakota Workers Compensation Bureau*, 435 N.W.2d 695, 697–98 (N.D.1989); *Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791, 794–95 (N.D.1980); *Jepson v. North Dakota Workmen's Compensation Bureau*, 417 N.W.2d 184, 185 (N.D.Ct.App. 1987).

[¶ 11] In 1989, the Legislature amended the aggravation statute by completely revising the previous statutory language and providing for an aggravation award in the case of a "preexisting condition," which was specifically defined to mean "disability or impairment known in advance of the work injury. It is sufficient to invoke the aggravation statute if the preexisting condition is active at the time of the work injury, evidenced by work restriction (active disability) or interference with function (active impairment)." 1989 N.D. Sess. Laws ch. 766, § 5. In *Bruns v. North Dakota Workers Compensation Bureau*, 1999 ND 116, ¶¶ 12–21, 595 N.W.2d 298, this Court held, under the 1989 version of the statute, an aggravation award is proper when a new work injury combines with and aggravates a preexisting condition, and the preexisting condition which is active at the time of the work injury can be evidenced by impairment less severe than loss of or loss of use of a member of the body.

[¶ 12] In 1997, the Legislature again amended and revised the aggravation statute. 1997 N.D. Sess. Laws ch. 544, § 1. Mikkelson's case is governed by the 1997 version of N.D.C.C. § 65–05–15, which provides in part:

When a compensable injury combines with a noncompensable injury, disease, or other condition, the bureau shall award benefits on an aggravation basis, on the following terms:

1. In cases of a prior injury, disease, or other condition, known in advance of the work injury, which has caused previous work restriction or interference with physical function the progression of which is substantially accelerated by, or the severity of which is substantially worsened by, a compensable injury, the bureau shall pay benefits during the period of acute care in full. The period of acute care is presumed to be sixty days immediately following the compensable injury, absent clear and convincing evidence to the contrary. Following the period of

acute care, the bureau shall pay benefits on an aggravation basis.

2. If the progression of a prior compensable injury is substantially accelerated by, or the severity of the compensable injury is substantially worsened by a noncompensable injury, disease, or other condition, the bureau shall pay benefits on an aggravation basis.

3. The bureau shall pay benefits on an aggravation basis as a percentage of the benefits to which the injured worker would otherwise be entitled, equal to the percentage of cause of the resulting condition that is attributable to the compensable injury. Benefits payable on an aggravation basis are presumed to be payable on a fifty percent basis. The party asserting a percentage other than the presumed fifty percent may rebut the presumption with clear and convincing evidence to the contrary.

The 1989 statutory reference to the preexisting condition being "active at the time of the work injury" is absent from the 1997 legislation.

[¶ 13] Mikkelson relies on *Wolf, Balliet, Elliott, Sloan, Jepson* and *Bruns* for her argument the preexisting condition must result in work restrictions or impairment that are evident at the time of the work injury for the aggravation statute to apply,

and because there was no evidence of work restrictions or impairment at the time of her work injury, the Bureau erred in applying the aggravation statute to her claim for benefits. Those cases, however, were decided under previous versions of the aggravation statute, and they are not particularly helpful in analyzing her claim under the 1997 statute. Under the new statute, an aggravation award is appropriate if the prior injury, disease or other condition is known in advance of a connected work injury and has caused previous work restriction or interference with physical function, and the work injury combines with the preexisting condition to substantially accelerate the progression of, or substantially worsen the severity of, the preexisting condition.[1]

[¶ 14] At the time of her June 1993 car accident, Mikkelson missed about two weeks of work before returning to employment without any medically mandated work restrictions. Treatments given to Mikkelson for almost one year after the car accident focused on "diffuse cervical, thoracic and lumbar pain, primarily cervical and thoracic pain," conditions similar to her current conditions.

[¶ 15] At his deposition, Dr. Dilla was asked whether Mikkelson had fibromyalgia before her October 1997 work injury:

A. Yes, sir. I do believe she suffered from fibromyalgia prior to the work injury.

---

1. The Bureau represented to the Legislature that, for the most part, all concepts of the 1989 aggravation statute were "carried over into the new language in the Bill, but they are restated in clearer and more concise terms." Hearing on H.B. 1261 Before the House Industry, Business and Labor Comm., 55th N.D. Legis. Sess. (Feb. 3, 1997) (written testimony of Reagan R. Pufall, attorney for the Bureau, at p. 5). The one concept from the 1989 law "omitted from the new language," *i.e.*, that the condition be "active" at the time of the work injury, was removed because it was "unnecessarily confusing" and was "vague and unhelpful." *Id.* at pp. 5–6.

The representations to the legislative committee concerning the omission of language from the proposed legislation was, in itself, at best confusing or at worst misleading. However, it does not alter the reality that the language was omitted from the statute and that under our rules of statutory construction the omission leaves no ambiguity to resolve. *E.g., Anderson v. Anderson ex rel. Anderson*, 1999 ND 57, ¶ 4, 591 N.W.2d 138 (stating Supreme Court does not disregard clear and unambiguous language in pretext of pursuing legislative intent); *Scott v. North Dakota Workers Compensation Bureau*, 1998 ND 221, ¶ 15, 587 N.W.2d 153 (stating it is presumed Legislature does not perform useless acts and that it intended to change existing law). The deletion of the language that the condition be "active" at the time of the work injury is clear and unambiguous.

Q. And it appears—or is it your opinion that that fibromyalgia was certainly at times symptomatic prior to the work injury of October '97?

A. Yes, sir, I do.

Q. After the work injury did the fibromyalgia itself and in describing that condition, did that condition itself—I want to focus just on the condition right now—did that condition get substantially worse?

A. Yes, sir, I believe that that is the case. That would be accurate.

. . . .

Q. Did she have the fibromyalgia back in '93 did it appear given the diffuse nature of the complaints or don't we know?

A. Again, I can't say definitively not having examined her back in '93 or '94, but based on my review of the records, the areas that she was complaining of, the trigger points that were supposedly being palpated out by her therapists and other treating physicians, all of those pieces of information are consistent with fibromyalgia.

Dr. Dilla also agreed that Mikkelson's work injury "substantially accelerated" her preexisting fibromyalgia.

[¶ 16] Dr. Dilla was unable to say whether Mikkelson had an impairment at the time of her October 1997 work injury, and Mikkelson denied any impairment or disability. Dr. Dilla noted, however, that Mikkelson's fibromyalgia clearly predated the work injury, and that he has never seen anyone with fibromyalgia have 100 percent symptom resolution. Dr. Dilla also stated Mikkelson's fibromyalgia was symptomatic before her work injury:

Q. Clearly, Diane Mikkelson had some interference with her functioning based on what appears to have been fibromyalgia back in '93 and '94?

A. Clearly back in '93, '94, yes, sir.

Q. And the question of how long that interference with function continued beyond May of '94 you're unable to answer because we don't have the medical records for it?

A. Yes, sir.

[¶ 17] The ALJ found Mikkelson's testimony "supported by lay witnesses and medical evidence showing improvement in her condition after the 1993 accident is ... consistent with the progression of a condition which resolved for a time until it was aggravated by a new injury which substantially accelerated its progress." Evidence that Mikkelson's preexisting condition was "active" at the time of her compensable work injury was not required to invoke the aggravation statute. We believe a reasoning mind reasonably could have found from the evidence that Mikkelson had preexisting fibromyalgia known in advance of the work injury which caused substantial interference with her functioning, and that the work injury substantially aggravated Mikkelson's underlying preexisting fibromyalgia. We conclude the Bureau properly applied the aggravation statute in this case.[2]

### B

[¶ 18] Mikkelson contends the Bureau erred in failing to award her disability benefits after October 27, 1997.

[¶ 19] The disability verification requirements are found in N.D.C.C. § 65–05–08.1, which provides in part:

1. An injured employee's doctor shall certify the period of disability and the extent of the injured worker's abilities and restrictions.

2. A doctor certifying disability shall include in the report filed with the bureau:

2. The Bureau adopted the ALJ's recommendation to remand to the Bureau for determination of Mikkelson's "period of acute care," during which benefits are payable "in full" under N.D.C.C. § 65–05–15. Although the parties on appeal have argued about the length of Mikkelson's acute phase, we express no opinion on this question.

a. The medical basis established by medical evidence supported by objective medical findings for the certification of disability;

b. Whether the employee is totally disabled, or, if the employee is not totally disabled, whether the employee is able to return to any employment, and a statement of the employee's restrictions and physical limitations; and

c. A professional opinion as to the expected length of, and reason for, the disability.

d. A doctor may not certify or verify past disability commencing more than sixty days before the doctor's examination of the employee.

3. The report must be filed on a form furnished by the bureau, or on any other form acceptable to the bureau.

4. The injured employee shall ensure that the required reports for any period of disability are filed.

To establish entitlement to disability benefits, the claimant must ensure that the claimant's doctor verify disability in a filed report containing the information required by the statute. *Lindell v. North Dakota Workers Compensation Bureau*, 1998 ND 174, ¶¶ 16–21, 584 N.W.2d 520 (construing the 1995 version of the statute).

[¶ 20] In its original order awarding benefits, the Bureau concluded Mikkelson was entitled to disability benefits from October 10 through October 27, 1997. This award was based on the report filed by Mikkelson's chiropractor who advised her to not work from October 10 until October 20, 1997, but said she could return to "[l]ight [m]edium [w]ork" from October 20 until October 27, 1997. The report contained no work restrictions after October 27, 1997. The Bureau's order specifically advised Mikkelson it had "not received any medical verification of disability for the claimant beyond October 27, 1997."

[¶ 21] The original report filed by Mikkelson's chiropractor is the only evidence in the record verifying any disability, and Mikkelson was placed on notice that further medical verification was necessary to obtain disability benefits beyond October 27, 1997. Mikkelson relies on Dr. Dilla's January 15, 1998 independent medical evaluation, in which he indicated that Mikkelson should "undergo a full two day functional capacity assessment," and "suspect[ed]" the assessment would probably show some degree of disability. Mikkelson also relies on a form provided by her chiropractor less than a week before the formal hearing, found "untimely" and inadmissible by the ALJ, indicating Mikkelson should be restricted to "[l]ight" work. However, neither of these items meets the specific statutory requirements for disability verification.

[¶ 22] We believe a reasoning mind reasonably could have determined from the evidence that Mikkelson failed to establish the statutory requirements for verifying disability after October 27, 1997. We conclude the Bureau did not err in denying Mikkelson disability benefits after October 27, 1997.

### III

[¶ 23] The judgment is affirmed.

[¶ 24] CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 25] This is but another example of the erosion of the bargain struck between workers and employers, specifically in the area of benefits for an aggravation of a preexisting condition. *See Saari v. ND Workers Compensation Bureau*, 1999 ND 144, 598 N.W.2d 174; *Baldock v. ND Workers Compensation Bureau*, 554 N.W.2d 441 (N.D.1996); *compare* N.D.C.C. § 65–05–15 (1989) and N.D.C.C. § 65–05–15 (1997). The problem is further compounded by Bureau attorney Reagan Pufall's representation to the legisla-

tive committee that the deletion of the language that the condition be "active" at the time of the work injury did not change the concepts of the 1989 aggravation statute and all the precedent developed by this Court, when in fact, it did, as pointed out in the majority opinion in footnote one.

[¶ 26] I concur with the majority in Part B, but respectfully dissent from Part A. The opinion of Dr. Dilla that Mikkelson had fibromyalgia before the October 1997 work injury has no factual basis. In fact, Dr. Dilla testified he was unable to state "definitively" Mikkelson had fibromyalgia in 1993 or 1994 only that her "trigger points" "palpated out by her therapists and other treating physicians" were "consistent with fibromyalgia." Bureau hearings must be conducted in accordance with the due process and fair hearing ground rules set out in the Administrative Agencies Practice Act ("AAPA"). N.D.C.C. ch. 28–32. "[The AAPA] outlines what evidence can be presented at the hearing, and what evidence can be considered in reaching decisions. N.D.C.C. §§ 28–32–06, 28–32–07." *S & S Landscaping Co. v. ND Workers Compensation Bureau*, 541 N.W.2d 80, 83 (N.D.1995). Under N.D.C.C. § 28–32–06(1), "[t]he admissibility of evidence in any adjudicative proceeding before an administrative agency shall be determined in accordance with the North Dakota Rules of Evidence." Although an administrative agency may waive application of the North Dakota Rules of Evidence, "only relevant evidence shall be admitted." N.D.C.C. § 28–32–06(1). The evidence on which the Bureau bases its findings must be both relevant and *competent*, however. *Sunderland v. ND Workmen's Compensation Bureau*, 370 N.W.2d 549 (N.D.1985); *O'Brien v. ND Workmen's Compensation Bureau*, 222 N.W.2d 379 (N.D.1974); *Erickson v. ND Workmen's Compensation Bureau*, 123 N.W.2d 292 (N.D.1963). Our decisions have stated a medical opinion must be stated to a reasonable degree of medical certainty or probability. *Kunnanz v. Edge*, 515 N.W.2d 167, 173 (N.D.1994).

[¶ 27] No one ever diagnosed Mikkelson with fibromyalgia before her October 1997 working injury. Dr. Krause, who treated Mikkelson following her 1993 car accident, never diagnosed fibromyalgia. In addition, Dr. Songsiridej, with whom Mikkelson sought treatment in 1998 for symptoms associated with her work injury, states that Mikkelson, in her opinion, did not have fibromyalgia after the car accident. The only diagnosis of fibromyalgia was made by Dr. Dilla, who performed a review of Mikkelson's medical records and an examination of Mikkelson at the request of the Bureau on January 15, 1998, which was after her October 1997 work injury. As Dr. Dilla himself acknowledged, fibromyalgia must be carefully diagnosed by identifying a minimum of 11 trigger points and determining that all the criteria for fibromyalgia are present. There is no evidence that everyone who suffers a paracervical strain or "whiplash" develops fibromyalgia. A reasoning mind could not have reasonably concluded from this evidence that Mikkelson had preexisting fibromyalgia, known in advance of the work injury, which caused substantial interference with her functioning. There are no facts to support the conclusory opinion of Dr. Dilla. The findings of fact are, therefore, not supported by any competent evidence, only pure speculation. I would reverse the Bureau's decision that the aggravation statute applies in this case and remand for reinstatement of full benefits due.

[¶ 28] Mary Muehlen Maring